EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Muñiz Burgos, Inc.<br>      Recurrido<br><br>            v.<br><br>Municipio de Yauco<br>      Peticionario | Certiorari<br><br>2013 TSPR 9<br><br>187 DPR ____ |

Número del Caso: CC-2011-673

Fecha: 29 de enero de 2013

Tribunal de Apelaciones:

          Región Judicial de Ponce

Abogado de la Parte Peticionaria:

          Lcdo. Aníbal Lugo Irizarry

Abogado de la Parte Recurrida:

          Lcdo. Antonio Amadeo Murga

Materia: Arbitrios y Patentes Municipales- Término a partir del cual debe solicitarse reintegro de arbitrios y patentes pagadas en exceso.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Muñiz Burgos, Inc.
    Recurrido

      v.

                                        *Certiorari*
                         CC-2011-673

Municipio de Yauco
    Peticionario

Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 29 de enero de 2013.

La Ley de Municipios Autónomos y la Ley de Patentes Municipales establecen términos prescriptivos para la solicitud de reembolso del pago en exceso de un arbitrio de construcción o de una patente. Nos corresponde determinar el punto de partida de estos términos en aquellos casos en que, habiéndose pagado los arbitrios de construcción y patentes municipales según computados originalmente, el dueño de la obra aprueba un cambio de orden que reduce la partida original.

I

Muñiz Burgos, Inc. (Muñiz Burgos) y la Autoridad de Edificios Públicos perfeccionaron un contrato para la construcción de una escuela a un costo de $17,299,000. Acto seguido, el 9 de octubre de 2000, Muñiz Burgos pagó $85,252.15 en patentes municipales y $278,741.48 por concepto de arbitrios de construcción. No hay controversia en cuanto a que estas cantidades corresponden al cómputo correcto aplicable en ese momento a ambos cargos.

Más de siete años después del pago de los arbitrios de construcción y de las patentes municipales, el 18 de diciembre de 2007, la Autoridad de Edificios Públicos aprobó la Orden de Cambio Núm. 2[1] que redujo el costo de la obra a $17,014,029.52, es decir, $248,970.48 menos que el costo original.[2] Ante ello, el 13 de febrero de 2008, Muñiz Burgos solicitó un reembolso al Municipio argumentando que esa reducción en costo afectó directamente la cantidad que debía pagar por concepto de arbitrios de construcción y patentes municipales, dado que dichos cargos se calculan en proporción al costo total de la obra. Según su cálculo, el costo reducido de la obra disminuyó la cantidad que debió recibir el municipio por concepto de arbitrios de

---

[1] Apéndice Petición de *Certiorari*, págs. 15-29. Esta orden de cambio es denominada como la "Orden Deductiva Núm. 2" por las partes y los tribunales inferiores.

[2] Apéndice Petición de *Certiorari*, pág. 3.

construcción y patentes municipales por $6,251.35.[3] El Municipio denegó el reembolso por entender que tal reclamación estaba prescrita, pues habían transcurrido siete años desde que se efectuó el pago original y la Ley de Patentes Municipales establece un término prescriptivo para la acción de reembolso de patentes de tres años desde que se hace el pago o cuatro años desde que se rinde una declaración, lo que ocurra más tarde.[4]

La Autoridad de Edificios Públicos envió una carta al Municipio, con fecha del 20 de febrero de 2008, en la cual certificó que Muñiz Burgos había ejecutado el proyecto de construcción de la Escuela Superior Urbana de Yauco, cuya aceptación final fue el 25 de mayo de 2004. En la carta señaló que "[e]sta certificación se emite con el propósito de que el Municipio le pueda proveer la Carta de Relevo,

---

[3] En la carta enviada al Director de Finanzas del Municipio, el demandante detalla la partida de arbitrios de construcción y patentes municipales de la siguiente forma: tomando como base el precio original de $17,299,000, los arbitrios ascendían a $292,990.20 y las patentes a $86,495; el demandante alega que el nuevo precio de $17,04,029.52 reduce la cantidad de arbitrios a $288,163.51 y de patentes a $85,070.15, para una diferencia de $4,826.49 y $1,424.85, respectivamente (Tanto Muñiz Burgos en su demanda, como los tribunales inferiores en sus sentencias establecen que la cantidad pagada en exceso es de $6,251.**35**, a pesar de que la suma de las cantidades individuales reclamadas totaliza $6,251.**34**). Para este cálculo, Muñiz Burgos partió de 0.005% en concepto de patentes y 0.016936817 por arbitrios. Apéndice Petición de *Certiorari*, a la pág. 12.

[4] Como veremos, la Ley de Municipio Autónomos establece que el término prescriptivo aplicable para una acción de reembolso para arbitrios de construcción, cuando la obra es detenida por el dueño de la obra, es de seis meses desde que se hace el pago por ese concepto.

relacionado al pago de arbitrios y patentes, según lo requiere el contrato".[5]

Ante la negativa del Municipio, el 20 de junio de 2008 Muñiz Burgos presentó la demanda que nos ocupa. Según el demandante, su causa de acción nació el 18 de diciembre de 2007 cuando la Autoridad de Edificios Públicos aprobó la Orden Deductiva Núm. 2 que redujo el costo total de la obra y, por consiguiente, el cálculo por arbitrios de construcción y patentes municipales.[6] Por su parte, el Municipio sostuvo que "el hecho de que la Orden Deductiva Núm. 2 modificara el monto del proyecto y tuviera repercusiones en el pago de la patente no fue contemplado por el legislador, por lo que el punto de partida para calcular el término prescriptivo es cuando se efectúa el

---

[5] Apéndice Petición de *Certiorari*, pág. 3. También surge del expediente una comunicación, con fecha de 1 de junio de 2004, de Muñiz Burgos dirigida a la Autoridad de Edificios Públicos en la cual consigna la devolución de ciertos materiales pertenecientes a la agencia,"[al] terminar y entregar la Escuela Superior Urbana de Yauco". Apéndice Petición de *Certiorari*, pág. 5.

[6] Muñiz Burgos también alegó que el Municipio de Yauco, mediante carta del 4 de marzo de 2008, a través del señor Hermes Caraballo Acosta, Recaudador Oficial del Municipio, le había concedido un crédito por la suma $15,673.37 en el pago de los arbitrios de construcción y de patentes municipales debido a que el contrato de construcción "sufrió un cambio de orden el cual disminuyó el costo del proyecto". Petición de *Certiorari*, pág. 10. En su contestación a la demanda, el Municipio admitió la existencia de la carta pero negó que la misma "tenga el efecto alegado por la parte demandante; ya que la ley sólo facultad [*sic*] al Director de Finanzas la atención de tales recomendaciones para que pueda vincular al Municipio". *Id.*

pago".[7] Ambas partes solicitaron sentencia sumaria y el 23 de noviembre de 2010, el Tribunal de Primera Instancia declaró con lugar la petición de sentencia sumaria presentada por Muñiz Burgos y ordenó al Municipio pagarle a este la cantidad de $6,251.35, más intereses legales y $1,250 en honorarios de abogado. En su sentencia, el Tribunal de Primera Instancia concluyó que la causa de acción de Muñiz Burgos nació con el cambio en el costo de la obra y, por consiguiente, que el término prescriptivo aplicable comenzó a correr desde ese momento.

Inconforme con la decisión, el Municipio recurrió al Tribunal de Apelaciones, que confirmó la sentencia del foro de instancia en todos sus extremos. El tribunal intermedio coincidió con el foro primario en que la Orden Deductiva Núm. 2 constituyó una nueva "declaración", que activó un nuevo término de cuatro años para solicitar un reembolso.[8] En cuanto a la partida de honorarios, el Tribunal de Apelaciones concluyó que se trató de un ejercicio legítimo de la discreción judicial.

El Municipio recurrió ante este Tribunal mediante Petición de *Certiorari* alegando la comisión de dos errores.

---

[7] Sentencia del Tribunal de Apelaciones, pág. 3.

[8] Ambos tribunales fundamentaron sus conclusiones en la definición de declaración de la sección 4057(a) de la Ley de Municipios Autónomos y en el periodo de prescripción que establece la sección 652f(b)(1) de la Ley de Patentes Municipales. Aplicaron el término prescriptivo de cuatro años desde el momento en que se autorizó la orden de cambio deductiva, concluyendo que Muñiz Burgos había reclamado oportunamente el reintegro de arbitrios y patentes municipales.

En primer lugar, insiste en que la causa de acción está prescrita, toda vez que el pago original fue el 9 de octubre de 2000 y la solicitud de reembolso se hizo el 13 de febrero de 2008, es decir, fuera del término establecido por la Ley de Patentes Municipales y la Ley de Municipios Autónomos.[9] Según el Municipio:

> Alega la apelada que, habiendo cambiado el precio del contrato mediante la orden deductiva aprobada por el dueño de la obra el 18 de diciembre de 2007, cuando hizo la reclamación de reembolso (febrero de 2008) al Municipio de Yauco[,] todavía no había[n] transcurrido los tres (3) años. Alegación que fue acogida por el Tribunal de [Primera] [I]nstancia modificando de esta forma la letra de la Ley, la cual es clara y no está sujeta a interpretación.
>
> El Legislador no consideró las circunstancias alegadas por la apelada. El punto de partida es desde cuándo se paga, no desde cuándo se aprueba la orden de cambio, que modifica el monto del proyecto computado para el pago de patente. El derecho reconocido por el legislador a solicitar reintegro de patentes lo circunscribe a unas circunstancias particulares y tiene que solicitarse en dicho término so pena de prescripción.
>
> […]
>
> En el caso que nos ocupa, la ley es clara al disponer cuál es el punto de partida para reconocer y ejercitar el derecho del reintegro de patentes municipales. Si el legislador hubiera interesado circunscribir este derecho al momento de cuándo surge el cambio del costo de la obra, lo hubiera hecho. Sin embargo lo circunscribió a unas circunstancias que él entendió razonables; la

---

[9] En la Petición de *Certiorari* el Municipio señaló que el Tribunal de Apelaciones erró "[a]l dictaminar que el punto de partida para el cómputo de los cuatro (4) años que establece la Ley de Municipios Autónomos para solicitar reintegro de patentes y arbitrios de construcción comienza a transcurrir desde la fecha en que se aprobó la orden deductiva del costo de la obra". (Énfasis suplido) Petición de *Certiorari*, pág. 4.

fecha en que la declaración fue rendida o desde el pago de patente la que expire más tarde.[10]

En cuanto a la reclamación de reembolso de arbitrios de construcción, el Municipio sostiene que la sección 4057(e) de la Ley de Municipios Autónomos, según enmendada, limita el derecho a solicitar reembolso sólo a dos circunstancias: (1) cuando el contribuyente haya efectuado el pago y el dueño de la obra paralice la misma antes de iniciada la construcción; (2) cuando el contribuyente haya pagado los arbitrios y, comenzada la obra, el dueño la detenga. Según el Municipio en la primera situación se le reintegrará la totalidad de los arbitrios pagados y en la segunda, se le reembolsará el 50% de los arbitrios pagados. En ambas situaciones, añade el Municipio, el contribuyente tendrá un término de seis meses para solicitar el reintegro.[11]

En segundo lugar, el Municipio niega haber actuado temerariamente, según determinó el foro de instancia. Por el contrario, considera que su alegación de que la causa de acción de Muñiz Burgos está prescrita es válida y no justifica la imposición de honorarios.

El 2 de diciembre de 2011 expedimos el auto de *certiorari*. En su comparecencia, Muñiz Burgos sostiene que "[la] orden de cambio deductiva varió retroactivamente el costo de la obra y por lo tanto el monto de los arbitrios y

---

[10] Petición de *Certiorari*, a las págs. 5-6.

[11] *Id.*, pág. 7.

patentes".[12] Según la parte recurrida, dicho cambio generó un exceso que tenía derecho a recobrar del Municipio. Insiste en que los derechos de arbitrios y patentes se fijan a base del costo contemplado de la obra y, de igual forma, sostiene que la interpretación adelantada por el Municipio conlleva resultados absurdos e irrazonables, a saber, que el recobro de lo pagado en exceso "estaría prescrito aún antes de surgir su causa de acción, lo que sería inconstitucional".[13] Puntualiza este argumento al señalar que, si el costo de la obra se hubiera elevado, en vez de reducido, sería lógico concluir que los arbitrios y patentes aumentarían y el Municipio insistiría en que se pagara la diferencia. Finalmente, reitera que el Municipio actuó con temeridad y se justifica la partida de honorarios de abogados. Tomando como base lo anterior, resolvemos.

II

A

La Ley de Municipios Autónomos fue aprobada por la Asamblea Legislativa para otorgar a los municipios un mayor grado de gobierno propio y autonomía fiscal.[14] Posteriormente, esta ley fue enmendada con el propósito de que los municipios ampliaran sus facultades contributivas y pudieran recaudar mayores ingresos para sufragar los

---

[12] Alegato de la parte recurrida, pág. 2.

[13] *Id.*, a la pág. 3.

[14] Ley Núm. 81-1991, según enmendada, 21 L.P.R.A. sec. 4001 *et seq.*

servicios que ofrecen a sus habitantes.[15] El poder de los municipios para imponer contribuciones, derechos, licencias y otros cargos está establecido en el artículo 2.002 de la Ley Núm. 81. Entre estas contribuciones se encuentra el arbitrio de construcción, "cuyo pago pueden requerir los municipios antes del comienzo de toda obra que se construya dentro de sus límites territoriales. Para fijar este arbitrio <u>se tomará en consideración el costo total del proyecto</u>, luego de restarle los gastos en concepto de ciertas partidas predeterminadas".[16] En cuanto a los arbitrios de construcción en particular, la ley dispone lo siguiente:

> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o municipal o del gobierno federal … deberá pagar [un] arbitrio de construcción correspondiente, previo el comienzo de la obra.

> En estos casos, se pagarán dichos arbitrios al municipio donde se lleve a cabo dicha obra previo a la fecha de su comienzo. <u>En aquellos casos donde surja una orden de cambio en el cual se autorice alguna variación al proyecto inicial, se verificará si dicho cambio constituye una</u>

---

[15] <u>Mun. de Utuado v. Aireko Const. Corp.</u>, 176 D.P.R. 897, 904 (2009). Véase además, Ley Núm. 81-1991 la cual establece como política pública "otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico".

[16] (Énfasis suplido) *Id*, en referencia a 21 L.P.R.A. sec. 4052(d).

ampliación y de así serlo se computará el arbitrio que corresponda.

[…]

En los casos de órdenes de cambio, se aplicará el arbitrio vigente al momento de la fecha de petición de la orden de cambio. Entendiéndose, que toda obra anterior se realizó a tenor con los estatutos que a través de los años han autorizado el cobro de arbitrios de construcción en los municipios.

Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el costo en que se incurra para realizar el proyecto luego de deducirle el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.[17]

Según el artículo 2.007 de la Ley Núm. 81, toda persona natural o jurídica responsable de llevar a cabo una obra como dueño, o su representante, "deberá someter ante la Oficina de Finanzas del municipio en cuestión una Declaración de Actividad detallada por renglón que describa los costos de la obra a realizarse".[18] Una vez presentada la declaración, el Director de Finanzas municipal determinará la cantidad que deberá pagarse por concepto de arbitrio.[19] Por su parte, el dueño de la obra podrá aceptar o rechazar el arbitrio impuesto por el municipio sobre el valor estimado de la obra y, según sea el caso, pagar el mismo, pagar bajo protesta y solicitar reconsideración o impugnarlo. Por otra parte, "[s]i el contribuyente hubiese

---

[17] (Énfasis suplido) 21 L.P.R.A. sec. 4052(d).

[18] 21 L.P.R.A. sec. 4057(a).

[19] 21 L.P.R.A. sec. 4057(b).

pagado en exceso, el municipio deberá reembolsar el arbitrio pagado en exceso dentro de los treinta (30) días después de la notificación al contribuyente".[20] Además, la ley establece el procedimiento a seguirse cuando ha habido un pago deficiente o, por el contrario, corresponde un reembolso. En lo pertinente, la ley dispone el procedimiento para solicitar reintegro cuando el contribuyente ha efectuado el pago de los arbitrios y el dueño de la obra decide detenerla:

> Si la obra hubiere comenzado y hubiere ocurrido cualquier actividad de construcción, el reintegro se limitará al cincuenta por ciento (50%). El reintegro se efectuará dentro de los treinta (30) días siguientes a la fecha en que se presente con [sic] el Director de Finanzas la solicitud de reintegro. No habrá lugar para solicitar reintegro de suma alguna luego de transcurrido seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular.

> […]

> El municipio podrá solicitar al desarrollador o contratista, fuese público o privado, evidencia acreditativa sobre el costo final del proyecto para verificar aumentos en el valor final de construcción, con el propósito de imponer pago de arbitrios por el aumento en el valor de la obra.[21]

De esta forma, la Ley de Municipios Autónomos estableció un procedimiento detallado para situaciones en las que la declaración sobre el valor de la obra presentada por el desarrollador o contratista es menor al valor real final, ya sea por error, intencionalmente o producto de un

---

[20] 21 L.P.R.A. sec. 4057(e).

[21] (Énfasis suplido) Id.

aumento en el costo de la obra. En esos casos, el municipio podrá exigir el pago de la deficiencia. De esa manera, se protege al erario municipal de que los dueños de las obras subestimen su valor con el propósito de pagar menos arbitrios. Igualmente, el aumento posterior en el valor de la obra producto de un cambio de orden faculta al municipio a cobrar los arbitrios correspondientes a dicho aumento.

Sin embargo, la ley no establece un procedimiento claro para el caso contrario, es decir, para cuando el cambio de orden resulta en que el valor final de la obra sea menor al inicialmente proyectado. Como vimos, en todo momento la ley supone que el cambio de orden aumentará el costo de la obra y, por tanto, la cantidad de arbitrios a pagarse. Aun así, provee una regla general en la sección 4052(d) de que los arbitrios deben computarse y ajustarse al costo final de la obra y que, de haber cambios de órdenes, se aplicará el arbitrio vigente en ese momento. Esto opera tanto a favor del municipio cuando el valor de la obra aumenta, como a favor del dueño de la obra cuando el valor disminuye.

Por su parte, la sección 4057(e) atiende detalladamente el proceso para subsanar deficiencias en el pago de arbitrios a favor del municipio, pero en lo que se refiere al reembolso de pagos en exceso, tan sólo menciona el supuesto e impone al municipio un término para efectuar el reembolso después de verificado el exceso, pero no establece un procedimiento claro para ello. Esta sección dispone un término prescriptivo de seis meses para la acción de

reembolso, pero lo hace en el contexto de obras cuya construcción se detiene, antes o después de iniciada. Hay, pues, un vacío estatutario en lo que respecta a cómo y cuándo se debe reclamar la diferencia en arbitrios cuando la obra no se detiene, sino que surge una disminución en el costo final de la obra producto de una orden de cambio.

En Mun. de Utuado v. Aireko Const. Cop. tuvimos la oportunidad de interpretar estas secciones de la Ley de Municipios Autónomos. En esa ocasión, la Autoridad de Edificios Públicos (AEP) llevó a cabo una subasta para la remodelación de una escuela municipal por un costo de $40,000,000. La buena pro fue otorgada a una compañía llamada L.P.C., que pagó $1,212,000 en arbitrios de construcción. Apenas comenzados los trabajos preparativos para la construcción, la AEP paralizó la obra y dio por terminado su contrato con L.P.C. "con el ánimo de reducir el costo de la obra".[22] Poco después la AEP, como dueña de la obra, contrató a Aireko para que continuara con el proyecto y solicitó al Municipio que le extendiera a dicha compañía un crédito equivalente a la cantidad que L.P.C. había pagado por concepto de arbitrios de construcción por la misma obra.[23] La AEP basó su argumento en que la obra era la misma y que lo único que cambió fue el contratista que la

_____

[22] Mun. de Utuado v. Aireko Const. Corp., 176 D.P.R. 897, 900 (2009).

[23] Curiosamente, en dicho caso nos vimos precisados a puntualizar que L.P.C. nunca solicitó el reembolso de los arbitrios de construcción que le pagó al Municipio. Id.

ejecutaría. Por tanto, no debían cobrársele a éste los arbitrios de construcción que L.P.C. había pagado. El Municipio no accedió a la petición. Posteriormente, dado que Aireko insistió en no pagar, el Municipio reclamó el pago de los arbitrios en los tribunales. En esa ocasión, señalamos que, aunque el contratista es el responsable de pagar los arbitrios, es la obra la que genera la obligación de efectuar el pago. A esos efectos, señalamos que los arbitrios de construcción que imponen los municipios recaen sobre la obra a construirse y no sobre el contratista.[24] De esta manera concluimos que por tratarse de la misma obra, no procedía la imposición del pago de arbitrios de construcción al nuevo contratista.

Vale señalar que, al igual que ocurre en el caso de autos, en Mun. de Utuado v. Aireko Const. Corp. no había disposición estatutaria que atendiera la controversia planteada. Sin embargo, ello no fue óbice a que interpretáramos el estatuto para llenar dicha laguna y resolviéramos que, en efecto, el cambio de contratista no facultaba al Municipio a cobrar nuevamente los arbitrios de

---

[24] Mun. de Utuado v. Aireko Const. Corp., a la pág. 911. Véase además, Interior Developers v. Mun. de San Juan, 177 D.P.R. 693 (2009), donde reafirmamos que la facultad de los municipios para imponer arbitrios de construcción está sujeta a que se configure el hecho imponible o evento contributivo, siendo el hecho imponible la construcción. Id., a la pág. 704. Expresamos entonces que, para efectos de los arbitrios, tanto el dueño de la obra como la persona encargada de construirla son considerados como contribuyentes ya que los arbitrios recaen sobre la obra. En los casos en que el dueño no sea quien construya la obra, el contratista será el responsable de efectuar el pago y pasar el costo al dueño.

construcción. Concluimos que la interpretación propuesta por el municipio era irrazonable y no debía sostenerse únicamente porque existía una laguna en el estatuto:

> Sin embargo, las alegaciones del Municipio no están sostenidas por la Ley de Municipios Autónomos, debido a que dicha ley no provee disposiciones sobre el proceso que debe seguirse en casos como el que aquí nos ocupa. Es decir, nuestra Legislatura no se ha expresado sobre las situaciones en que, luego de comenzada la construcción de la obra y sin que se desista de realizarla, se sustituye a la persona del contratista general.

> No podemos avalar la interpretación que el Municipio pretende darle a la Ley de Municipios Autónomos. Hemos resuelto que una sección de un estatuto no puede ser interpretada de forma aislada. Es preciso interpretar un estatuto en su totalidad, armonizando el significado de sus distintas partes e implementando la intención de la Asamblea Legislativa. La determinación que un tribunal haga debe asegurar el resultado que el legislador quiso obtener al crear la ley.

> La Ley de Municipios Autónomos confiere a los municipios la autoridad para imponer arbitrios de construcción. Estos arbitrios deben ser pagados al inicio de la obra <u>y se fijarán de acuerdo al costo del proyecto</u>, sin importar cuántos contratistas lo construyan.[25]

Lo anterior nos presenta varios asuntos pertinentes a la controversia de autos. En primer lugar, la facultad impositiva delegada a los municipios por la ley se ejercerá sobre la actividad económica a ser realizada en el territorio municipal. Los arbitrios recaerán sobre el valor de esa actividad. Notamos que el elemento central al determinar cuánto debe pagarse por concepto de arbitrios de construcción es el <u>costo final de la obra</u>. Por tanto, a

---

[25] (Énfasis suplido) *Id.*, a la pág. 909.

medida que dicho costo fluctúe, también fluctuarán los arbitrios debidos. Ya vimos que la sección 4057(e) de la Ley de Municipios Autónomos establece con claridad el proceso a seguir cuando el valor aumenta, pero no es igualmente claro en caso que el valor disminuya. En segundo lugar, el que la Asamblea Legislativa no haya previsto todos los escenarios posibles al aprobar determinado estatuto no significa que debamos validar resultados que a la luz de la totalidad del estatuto mismo resultan irrazonables. Por el contrario, nuestro deber judicial es interpretar el estatuto razonablemente, de manera que se cumpla la intención legislativa. Hemos resuelto que "[a]nte la opción entre una interpretación literal de la ley que conduzca a resultados absurdos y una interpretación razonable que sea compatible con el propósito legislativo, se debe preferir la última".[26]

B

La Ley de Municipios Autónomos atiende únicamente el proceso de cobro y revisión de arbitrios de construcción. Por su parte, la Ley Núm. 113 de 10 de julio de 1974, según enmendada, regula el cobro y revisión de patentes municipales.[27] Esta ley define una patente como "la contribución impuesta y cobrada por el municipio bajo las disposiciones de las secs. 651 a 652y de este título, a toda persona dedicada con fines de lucro a la prestación de

---

[26] Martínez v. D.A.C.O., 163 D.P.R. 594, 603 (2004).

[27] Ley de Patentes Municipales, 21 L.P.R.A. sec. 621 *et seq.*

cualquier servicio, a la venta de cualquier bien[,] a cualquier negocio financiero o negocio en los municipios del Estado Libre Asociado de Puerto Rico".[28] En ocasiones anteriores, hemos expresado que, aunque la patente adopta la forma de un permiso o licencia para el ejercicio de una actividad económica, realmente constituye un impuesto que va a variar de acuerdo al volumen de negocio de la empresa tributada.[29]

Al igual que en el caso de los arbitrios de construcción, el proceso para computar, cobrar y pagar una patente municipal comienza con la presentación de una declaración sobre el volumen de negocio ante el Director de Finanzas del municipio.[30] La cantidad a pagarse se computará de acuerdo a la actividad económica realizada tomando como base el volumen de negocios realizado por la persona o entidad dentro de los límites territoriales del municipio.[31]

_____

[28] 21 L.P.R.A. sec. 651a(a)(16).

[29] Burlington Air Express v. Municipio de Carolina, 154 D.P.R. 588 (2001); American Express v. Municipio de San Juan, 120 D.P.R. 339 (1988); RCA v. Gobierno de la Capital, 91 D.P.R. 416 (1964)(revocado por otras razones en ELA v. Northwestern Selecta, 2012 T.S.P.R. 56, 185 D.P.R. ___ (2012).

[30] 21 L.P.R.A. sec. 651i(b).

[31] Véanse 21 L.P.R.A. secs. 651j y 651k. El cálculo de las patentes dependerá de si anteriormente el contribuyente realizó actividad económica en el municipio. Si el contribuyente llevó a cabo actividad económica en el municipio en el año anterior, las patentes a pagar se computarán tomando como base el "volumen de negocio realizado durante su año de contabilidad terminado dentro del año calendario inmediatamente anterior". 21 L.P.R.A. sec. 651f. Si, por el contrario, no llevó a cabo industria o

La Ley de Patentes define volumen de negocios como "los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio…".[32] Por otra parte, define ingreso bruto como aquellos ingresos atribuibles a la operación que se lleva a cabo en el municipio.[33] En el caso de las obras de construcción, la base del cálculo de las patentes recae sobre el volumen de negocio del encargado de la construcción, equivalente al valor de la obra.

Por otro lado, la Ley de Patentes establece que la autoridad otorgada a los municipios para imponer patentes sobre el volumen de negocios del contribuyente no deberá interpretarse como una privación o limitación de las facultades de los municipios de imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas sobre otros renglones.[34] De esta manera, la asamblea legislativa autorizó expresamente a los municipios al cobro de patentes y arbitrios sobre un mismo evento económico.[35]

---

negocio en el municipio durante el año previo, "la patente será computada tomando como base el volumen de negocios realizado durante el período en que llevó a cabo industria o negocio, elevando dicho volumen a una base anual". *Id.*

[32] 21 L.P.R.A. sec. 651a(a)(7).

[33] *Id.*

[34] 21 L.P.R.A. sec. 651b.

[35] Río Construction v. Municipio de Caguas, 155 D.P.R. 394 (2001). La Ley Núm. 93-1992 enmendó la Ley de Patentes

La Ley también establece un proceso para la tasación y cobro de deficiencias, en caso que se haya pagado por debajo de lo debido, así como para situaciones que requieran un reembolso, en caso de que se haya pagado en exceso.[36] En cuanto a posibles pagos en exceso que requieran un crédito o reembolso, la Ley de Patentes Municipales dispone en su sección 652e:

> Si la persona hubiere pagado como un plazo de la patente más de la cantidad determinada como el monto correcto de dicho plazo, el pago en exceso se acreditará contra los plazos no pagados si los hubiere. Si la cantidad ya pagada, fuere o no a base de plazos, excediese la cantidad determinada como el monto correcto de la patente, el pago en

Municipales para añadir el siguiente párrafo, entre otras enmiendas:

> La facultad que por las secs. 651a a 652y de este título se confiere a los municipios para imponer patentes sobre el volumen de negocios realizado por persona o entidades dentro de sus límites territoriales en forma alguna se interpretará que priva o limita las facultades de los municipios para imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas sobre cualesquiera otros renglones, no incompatibles con la tributación impuesta por el Estado, cuando los objetos y actividades sujetos a tributación se lleven a cabo dentro de los límites territoriales del municipio. La tributación de un objeto o actividad se considerará un acto separado y distinto no incluido o inherente al tributo que se impone sobre el volumen de negocios que sirve de base para imponer las patentes.

[36] Cabe mencionar que el estatuto define lo que constituye una reducción para efectos de este proceso: "El término 'reducción' significa aquella parte de una reducción, crédito, reintegro u otro reembolso que se hiciere por razón de que la patente que autoriza a imponer las secs. 651 a 652 de este título es menor que el exceso de la cantidad especificada en el inciso (a)(1) de esta sección sobre el monto de reducciones previamente hechas". 21 L.P.R.A. sec. 651n(b). Por su parte, la sección también atiende las deficiencias que ocurren cuando la cantidad pagada es insuficiente. 21 L.P.R.A. sec. 651n(a).

exceso se acreditará. Las disposiciones de esta sección y las disposiciones de la sec. 652f de este título serán de aplicación únicamente cuando el director de finanzas determine y notifique una deficiencia tal y como se define y regula en la sec. 651o de este título.[37]

Por su parte, la sección 652f, en lo pertinente, establece lo siguiente:

A menos que una reclamación de crédito o reintegro sea radicada por la persona dentro de cuatro (4) años desde la fecha en que la declaración fue rendida por la persona o dentro de tres (3) años desde la fecha en que la patente fue pagada, no se concederá o hará crédito o reintegro alguno después del vencimiento de aquél de dichos periodos [*sic*], aquel que expire más tarde.[38]

De lo anterior surge que el proceso para reclamar un reembolso establecido por estas secciones de la Ley de Patentes Municipales está diseñado para atender dos circunstancias. En primer lugar, que la persona pague en exceso a lo que debía por causa de un error suyo. Es decir, que pague más de lo que se le exija. Por eso, uno de los puntos de partida es el momento en que se efectúa el pago, pues de esa manera se exige a la persona que sea diligente en impugnar lo pagado de más por error. El segundo escenario previsto por el estatuto es que, a pesar de haber pagado correctamente lo exigido por el municipio, la persona se percate de que la determinación inicial del municipio en cuanto a la actividad económica realizada o al cómputo específico de la patente correspondiente es incorrecta. En

---

[37] 21 L.P.R.A. sec. 652e.

[38] 21 L.P.R.A. sec. 652f(b)(1).

ambos casos, <u>lo que se impugna es o la determinación del municipio estableciendo el valor de la actividad realizada o el cómputo que determinó el pago realizado</u>. Por eso es que el otro punto de partida es la presentación de la declaración, pues se le exige a la persona que analice diligentemente si la determinación del municipio es correcta.

De igual forma, la sección 651o de la Ley de Patentes Municipales establece un procedimiento considerablemente detallado para el cobro e impugnación de deficiencias alegadas por el municipio.[39] La Ley se limita principalmente a establecer que la acción para pedir un reembolso prescribirá a los tres años desde el pago o cuatro años desde que se presentó la declaración, el término que sea mayor.

Así, al igual que la Ley Núm. 81, la Ley de Patentes Municipales, a pesar de reconocer el derecho al reembolso, no establece un mecanismo para atender aquella situación en la que, por razón de un cambio de orden que reduce el costo de la obra, la cantidad declarada resulta mayor a la real, dando lugar a un derecho de reembolso.

---

[39] 21 L.P.R.A. sec. 651o. En esos casos, el municipio tendrá cuatro años para cobrar la deficiencia o seis años si se omitió en cuanto al volumen de negocios una cantidad que excediere el veinticinco porciento del volumen declarado. 21 L.P.R.A. sec. 651r. Si se presentó una declaración falsa o se omitió hacer la declaración como tal, no hay término prescriptivo. 21 L.P.R.A. sec. 651r(a).

A medida que se establece un nuevo costo para la obra, se altera la cantidad que debe pagarse como patentes. El recurrido sostiene que el inicio del término prescriptivo para impugnar esa nueva determinación también se altera, para comenzar a partir de la fecha del cambio. Por otro lado, si aceptamos la posición del municipio, es decir, que el término prescriptivo transcurre desde que se hace el pago original, el obligado a pagar la patente en este caso, Muñiz Burgos, tendría que solicitar el reembolso antes que tenga razón para exigirlo. Hemos resuelto que "un estatuto de prescripción que tenga el efecto de exigirle a los demandantes instar su acción antes de que tengan conocimiento de que tal causa de acción existe viola el debido proceso de ley".[40] De igual forma, hemos expresado que "la Asamblea Legislativa tiene amplia facultad para establecer los términos correspondientes, siempre y cuando no sean tan cortos que violen la cláusula del debido proceso de ley".[41] Evidentemente, un término prescriptivo que vence antes de que nazca la causa de acción es incompatible con dicha disposición constitucional.

---

[40] Vera v. Dr. Bravo, 161 D.P.R. 308, 327 (2004). Véase, además, Nazario v. E.L.A., 159 D.P.R. 799, 805 (Sentencia, 2003); Santiago v. Ríos Alonso, 156 D.P.R. 181, 190 (2002); Ojeda v. El Vocero, 137 D.P.R. 315, 331 (1994); Alicea v. Córdova, 117 D.P.R. 676, 690 (1986).

[41] Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943, 949-950 (1991).

C

Los términos prescriptivos no tienen vida propia, pues dependen de una causa de acción que los active. Sin causa de acción no hay término prescriptivo. Por tanto, será cuando todos los elementos de una causa de acción estén presentes que comenzará a correr el término prescriptivo correspondiente.[42] Aceptar la posición del Municipio le requeriría al contratista solicitar un reembolso al que aún no tiene derecho, pues no es hasta que varíe el costo de la obra que habrá una reducción correspondiente en los arbitrios y en la patente. En otras palabras, según la propuesta del Municipio, el contribuyente tendría que instar una acción frívola para que su solicitud fuera oportuna. Además, no podemos olvidar que para efectos de tanto la Ley de Municipios Autónomos como la Ley de Patentes Municipales el cómputo correspondiente se hará tomando como base el costo final de la obra. Evidentemente, si el dueño de la obra ordena cambios que reducen el costo de la obra a realizarse, los arbitrios y patentes disminuirán también. Si el pago por esos conceptos se hace antes de la reducción en el valor de la obra, habrá un pago en exceso desde el momento de la reducción y no antes y, por consiguiente, desde ese momento y no antes nacerá la causa de acción para exigir el reembolso.

Por lo tanto, concluimos que cuando se reclame un reembolso por los arbitrios de construcción y patentes

---

[42] Véase Rodríguez v. Barreto, 113 D.P.R. 541, 547 (1982).

municipales pagados en exceso debido a la reducción en el costo final de la obra como resultado de un cambio de orden requerido por el dueño de la obra, el término para instar la acción comenzará a correr desde que se hace dicho cambio.[43] Esta conclusión evita una lectura inconstitucional de los estatutos mencionados, pues de lo contrario, las correspondientes acciones de reembolso prescribirían antes de poderse instar, lo cual violaría el debido proceso de ley. Peor aún, obligaría al contribuyente a solicitar el reembolso antes de que bajara el costo de la obra que produce el pago en exceso que se reclama. Ello resultaría en el absurdo que nuestro ordenamiento rechaza.

D

Ahora bien, determinado el punto de partida, ¿cuál es el término prescriptivo aplicable en estos casos? Los tribunales recurridos concluyeron que la orden de cambio era una nueva declaración de arbitrios y patentes desde la cual comenzaría a correr el término prescriptivo de cuatro años según dispone la Ley de Patentes Municipales.[44] Coincidimos con el Tribunal de Apelaciones en que el término prescriptivo de cuatro años que establece la Ley de Patentes Municipales para la reclamación de reintegro cuando se haya

---

[43] Resulta obvio pensar que una orden de cambio, sea esta deductiva o aditiva, debe ser autorizada por el dueño de la obra durante el transcurso de la construcción y antes de finalizada la misma.

[44] Los tribunales no aplicaron ningún término prescriptivo relacionado a la Ley de Municipios Autónomos. Véase nota al calce 8.

hecho un pago en exceso por concepto de patentes es aplicable a la situación de autos. Así, la autorización de una orden de cambio que reduzca el valor final de la obra constituye una nueva declaración desde la cual comienza a correr un nuevo término de cuatro años para presentar la solicitud de reembolso del pago en exceso de patentes municipales sobre la construcción.

En cuanto al reembolso de los arbitrios, aunque la Ley de Municipios Autónomos reconoce la posibilidad de que después de que estos se paguen surjan órdenes de cambio que alteren el valor final de la obra, solo contempla la posibilidad de que dicho valor aumente. A ese fin, la ley faculta a los municipios a solicitarle al desarrollador o contratista evidencia sobre el valor final de construcción.[45] Una vez acreditado el costo final de la obra, el municipio podrá imponer el pago de arbitrios sobre el aumento en el valor de la obra.[46] Esta disposición evidencia la intención legislativa de ampliar el marco de acción de los municipios y de proveerles "las herramientas financieras, así como los poderes y facultades necesarias

---

[45] 21 L.P.R.A. sec. 4057(e). La Ley Núm. 258-2004 enmendó la Ley de Municipios Autónomos para, entre otras disposiciones, añadir al art. 2.007(e) el siguiente párrafo:

El municipio podrá solicitar al desarrollador o contratista, fuese público o privado, evidencia acreditativa sobre el costo final del proyecto para verificar aumentos en el valor final de construcción, con el propósito de imponer pago de arbitrios por el aumento en valor de la obra.

[46] *Id.*

para asumir una función central y fundamental en su desarrollo urbano, social y económico".[47]

Sin embargo, la Ley no menciona la situación contraria, la reducción en el valor de la obra producto de órdenes de cambio. Las múltiples enmiendas realizadas a la ley no han aclarado aún el procedimiento para presentar una solicitud de reembolso de los arbitrios pagados en exceso en aquellos casos en que el cambio de orden resulte en una reducción en el costo final de la obra. Tampoco han establecido un término prescriptivo para instar una solicitud de reintegro de arbitrios en situaciones como la de autos. No obstante, encontramos en la Ley de Municipios Autónomos una disposición que nos permite llenar esta laguna normativa. En esta, el legislador establece un procedimiento y término para solicitar el reintegro de arbitrios de construcción pagados previamente por el contribuyente. Se trata del término de seis meses que aplica cuando, una vez pagados los arbitrios en su totalidad, el dueño de la obra decide paralizar la misma, antes o después de comenzada.[48]

En ocasiones anteriores hemos resuelto que, en ausencia de un término prescriptivo fijado por ley, debemos utilizar el término más análogo, recurriendo incluso a otra

---

[47] Artículo 1.002 de la Ley Núm. 81-1991, según enmendado por el Artículo 1 de la Ley Núm. 258-2004.

[48] 21 L.P.R.A. sec. 4057(e).

legislación afín a la materia.[49]   En el caso de autos no surge la necesidad de identificar estatutos similares a la Ley de Municipios Autónomos. Por el contrario, la Asamblea Legislativa estableció en la misma ley un término prescriptivo de seis meses para las solicitudes de reembolso de arbitrios de construcción cuando la obra es detenida por su dueño. Esta disposición evidencia que el legislador contempló la necesidad de establecer un término prescriptivo corto para regular las peticiones de reintegro de los arbitrios de construcción. De esta manera la legislatura procuró proteger la capacidad fiscal de los municipios de poder contar con los ingresos recaudados para realizar su obra.[50]

Ante la ausencia de un término prescriptivo para solicitar reintegro de los arbitrios de construcción para la situación específica de autos, y hasta que la legislatura se exprese sobre el vacío que hemos identificado, resolvemos adoptar el término de seis meses para la reclamación de reembolso por arbitrios de construcción pagados en exceso

---

[49] Olmo v. Rubicam, 110 D.P.R. 740 (1981); Maldonado v. Russe, 153 D.P.R. 342 (2001); Suárez Ruiz v. Figueroa Colón, 145 D.P.R: 142(1998).

[50] En la Exposición de Motivos de la Ley Núm. 199-1996 que enmienda la Ley 81 para incluir este término, la Asamblea Legislativa hace un recuento histórico de la legislación relacionada a las facultades legislativas y administrativas de los municipios. Dicho recuento enfatiza la intención legislativa de ampliar y fortalecer las facultades de los municipios para proveerles la autonomía administrativa y fiscal necesaria para fomentar el desarrollo urbano, social y económico de los municipios.

como resultado de una reducción en el costo final de la obra a raíz de una orden de cambio requerida por el dueño de la obra. Con ello subsanamos la lesión al derecho del contribuyente a tributar por lo que realmente invierte y respetamos la política pública que le requiere diligencia en la presentación de su reclamo para salvaguardar las finanzas municipales.[51]

III

En el caso de autos, Muñiz Burgos pagó los arbitrios de construcción y patentes municipales el 9 de octubre de 2000. Estos pagos correspondieron al cómputo que tomó como base el costo original de la obra según establecido por el municipio. Si Muñiz Burgos hubiera entendido que dicho pago fue erróneo o que la declaración del municipio en cuanto al valor de la obra o las patentes y los arbitrios computados eran incorrectos, su causa de acción estaría prescrita. Pero Muñiz Burgos no impugna el cálculo original de los arbitrios o patentes, sino el exceso creado por la disminución en las obras ordenada por la Autoridad de Edificios Públicos en diciembre de 2007. Argumenta el recurrido que no tenía razón

---

[51] El historial legislativo de la Ley Núm. 199-1996, la cual enmienda la Ley Núm. 81-1991 para efectos de establecer los procedimientos que deberán aplicar los municipios en la imposición de un arbitrio de construcción, revela que el Proyecto de la Cámara 1938 tenía como propósito definir "con mayor claridad el alcance y las limitaciones de la facultad impositiva de los municipios y el Estado, así como las responsabilidades y protecciones necesarias para el contribuyente". Informe del Senado de 10 de junio de 1996 sobre el P. de la C. Núm. 1938 e Informe de la Cámara de Representantes de 8 de mayo de 1996 del P. de la C. Núm. 1938.

alguna para instar una demanda antes de esa fecha, pues aún no tenía derecho a reembolso alguno.

La acción de la Autoridad de Edificios Públicos que redujo el costo de la obra tuvo un efecto sobre el cómputo de arbitrios y patentes, pues, como hemos visto, éstos corresponden al costo final de la obra. A medida que un cambio de orden aumenta el costo, aumentarán las patentes y los arbitrios. Igual ocurre con una reducción. El pago original realizado en octubre de 2000 se convirtió en excesivo cuando se redujo el costo final de la obra, pues partía de un costo inicial que terminó siendo mayor al costo final. Es desde que surge esa reducción, evidenciada por la orden de cambio correspondiente, que nace la causa de acción para solicitar el reembolso por la cantidad pagada en exceso y comienzan a transcurrir los términos prescriptivos, el de cuatro años aplicable al reembolso de las patentes y el de seis meses aplicable al reembolso de los arbitrios. No obstante, dado los hechos específicos de este caso, resulta innecesario determinar si el recurrido solicitó el reintegro dentro del término prescriptivo aplicable pues la orden de cambio deductiva en la cual basó su solicitud fue aprobada luego de entregada y aceptada la obra.

El Tribunal de Apelaciones resolvió que la orden deductiva de la Autoridad de Edificios Públicos constituyó una nueva declaración que activaría un nuevo término prescriptivo. Sin embargo, en el expediente encontramos evidencia de que Muñiz Burgos entregó la obra y que la misma

fue aceptada por la Autoridad de Edificios Públicos el 25 de mayo de 2004. La "Orden de Cambio Núm. 2" fue aprobada el 18 de diciembre de 2007, más de tres años después de finalizada y aceptada la obra. Esta es la única orden de cambio deductiva a la que se refieren las partes en sus alegatos. No podemos aceptar que una orden de cambio aprobada varios años después que se termina y se acepta una obra constituya una nueva declaración que activa un nuevo término prescriptivo para solicitar reembolso de patentes y arbitrios pagados en exceso. Evidentemente, la obra fue modificada por instrucciones previas de su dueño. Si bien determinamos que no es razonable restringir el derecho a reclamar un reembolso por los arbitrios de construcción y patentes municipales pagados en exceso, no podemos avalar la aprobación retroactiva de órdenes de cambio deductivas con miras a cumplir los términos prescriptivos para solicitar reembolsos. El contratista debe ser diligente en obtener por escrito cualquier cambio que reduzca el costo final de la obra, permitiéndole así al contratista solicitar el reembolso de arbitrios y patentes de forma oportuna. Al no presentar evidencia de una orden de cambio previa, a la que necesariamente respondieran las modificaciones en la obra aceptada en el año 2004, ni una solicitud de reembolso a partir de dicha orden, el recurrido no nos ha puesto en condiciones de conceder el reintegro del exceso pagado por concepto de arbitrios de construcción y de patentes municipales.

Por último, el municipio objeta la imposición de honorarios de abogados. En nuestro ordenamiento, la imposición de honorarios de abogados procede cuando una parte ha actuado con temeridad o frivolidad.[52] De esta forma, se castiga a un litigante perdidoso que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito".[53] La decisión de imponer honorarios corresponde a la sana discreción del tribunal. Por lo tanto, solamente se dejará sin efecto si el foro primario incurrió en abuso de discreción. Dada las circunstancias de este caso y las lagunas evidentes en la Ley de Municipios Autónomos y la Ley de Patentes Municipales, entendemos que el foro primario abusó de su discreción al imponerle al municipio el pago de honorarios. Por tanto, dejamos sin efecto dicha determinación.

En virtud de lo anterior, revocamos la decisión del Tribunal de Apelaciones y, por consiguiente, la del Tribunal de Primera Instancia. Se desestima la demanda presentada.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

---

[52] _Domínguez v. G.A. Life_, 157 D.P.R. 690, 706 (2002).

[53] _Id._

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Muñiz Burgos, Inc.
    Recurrido

                                          *Certiorari*

        v.

                            CC-2011-673

Municipio de Yauco
    Peticionario


                        *SENTENCIA*


    En San Juan, Puerto Rico, a 29 de enero de 2013.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones en su totalidad. Se desestima la demanda presentada por Muñiz Burgos, Inc.

        Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Estrella Martínez emitió una Opinión concurrente a la que se unen los Jueces Asociados señor Martínez Torres y señor Rivera García.


                            Aida Ileana Oquendo Graulau
                            Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Muñiz Burgos, Inc.

    Recurrido

       v.

                CC-2011-673     Certiorari

Municipio de Yauco

    Peticionario

Opinión Concurrente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se unen los Jueces Asociados SEÑORES MARTÍNEZ TORRES Y RIVERA GARCÍA.

San Juan, Puerto Rico, a 29 de enero de 2013.

Concurro con el dictamen de la Opinión mayoritaria por entender que el legislador sí contempló las variaciones del costo total de la obra y hasta las órdenes de cancelarla en su totalidad, para fines del cómputo de pago por concepto de arbitrios de construcción y patentes municipales, y una posible devolución de lo pagado. En consecuencia, respetuosamente considero que el Tribunal no debe trastocar la política pública adoptada en la legislación municipal contributiva que rige los términos para reclamar rembolsos y reintegros por concepto de esos pagos.

I

Acogemos los hechos expuestos por la Opinión mayoritaria. Éstos representan lo acaecido en el caso ante este Tribunal.

Resaltamos que Muñiz Burgos, Inc. el 9 de octubre de 2000 pagó arbitrios de construcción y patentes al Municipio de Yauco con relación a un proyecto para la construcción de una escuela. La cantidad pagada correspondía al cómputo aplicable para ambos cargos. Transcurridos siete años desde el pago, la Autoridad de Edificios Públicos emitió un cambio de orden que redujo el costo de la obra. Como consecuencia de ello, Muñiz Burgos, Inc. solicitó el 13 de febrero de 2008 que se le devolvieran $6,251.35 por el pago de arbitrios de construcción y patentes bajo el fundamento de que efectuó un pago en exceso. El Municipio se negó a ello al sostener que el reclamo instado por Muñiz Burgos, Inc. fue en exceso a los términos establecidos por la ley.

El Tribunal de Primera Instancia ordenó la devolución del dinero reclamado por Muñiz Burgos, Inc. Esta decisión fue impugnada por el Municipio de Yauco ante el Tribunal de Apelaciones, el cual confirmó al foro primario. Inconforme, el Municipio de Yauco acudió ante este Tribunal. Cuestionó el punto de partida utilizado para el cómputo del periodo que tenía Muñiz Burgos, Inc. para ejercer su reclamo y la imposición de la partida de honorarios de abogado.[54]

_____

[54]No existe ante este Tribunal un planteamiento sobre la constitucionalidad o no de los términos fijados. Tampoco

## II

Conforme al ordenamiento constitucional puertorriqueño, la facultad para imponer contribuciones compete primordialmente a la Rama Legislativa. La Constitución del Estado Libre Asociado de Puerto Rico dispone que el poder para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. Art. II Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Ricio, L.P.R.A., Tomo 1, ed. 2008, pág. 420; Cía. de Turismo de P.R. v. Mun. de Vieques, 179 D.P.R. 578, 583-584 (2010). Ahora bien, el Estado puede expresamente delegar su facultad para imponer contribuciones. Interior Developers v. Mun. de San Juan, 177 D.P.R. 693, 703 (2009).

Con el fin de delegar a los municipios la potestad de imponer tributos para que éstos puedan recaudar fondos para brindar servicios a sus habitantes, la Asamblea Legislativa aprobó la Ley Núm. 81-1991, según enmendada, conocida como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, 21 L.P.R.A. sec. 4001, *et seq.* En lo

se cuestionó si los mismos son sumamente onerosos para reclamar el reintegro. La única controversia a dilucidar consiste en determinar desde cuándo comienza el periodo para solicitar reintegros de patentes municipales y arbitrios de construcción. Bajo estas circunstancias, solo nos corresponde interpretar y aplicar la ley aprobada.

De otra parte, coincidimos con la decisión de la mayoría de este Tribunal de que no procede la imposición de honorarios de abogado contra el Municipio de Yauco.

pertinente, la Rama Legislativa delegó a los municipios en el Art. 2.002 (d), 21 L.P.R.A. sec. 4052(d), la potestad de imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de sus límites territoriales, en la medida de que éstos fueran compatibles con el Código de Rentas Internas y las leyes del Estado.

En lo relevante, el Art. 2.002 de la Ley de Municipios Autónomos, *supra*, requiere el pago de arbitrio de construcción correspondiente al proyecto, previo al comienzo de dicha obra y regula cómo procede el pago del arbitrio de construcción. En cuanto al tema que nos concierne sobre las variaciones relacionadas con el pago de arbitrios, una lectura del Art. 2.002 inciso (d) de la Ley de Municipios Autónomos, *supra*, revela que el legislador contempló expresamente la posibilidad de que surjan órdenes de cambio que autoricen alguna variación al proyecto inicial, y por ende afecten el pago de arbitrios de construcción. En ningún momento el legislador limitó el lenguaje de esas variaciones por órdenes de cambio a las que aumentan el valor de la obra. Por el contrario, el lenguaje utilizado fue uno inclusivo y el articulado impone un deber ministerial a las autoridades municipales para que verifiquen el alcance de la variación. En caso de que la variación constituya una ampliación del costo total original, se activa la consecuencia jurídica de computar el pago del arbitrio adicional al disponer que:

> [E]n aquellos casos donde surja una orden de cambio en la cual se autorice una variación al proyecto inicial, se verificará si dicho cambio constituye una ampliación y de así serlo se computará el arbitrio que corresponda. 21 L.P.R.A. sec. 4052 (d).

El lenguaje de la citada disposición es diáfano. De éste surge que en efecto, la Asamblea Legislativa consideró que los proyectos pueden contener órdenes de cambio que varíen los mismos. Al así hacerlo, avaló la imposición de un arbitrio adicional a las ampliaciones, pero no concedió un remedio de rembolso de pago de arbitrios de construcción producto de órdenes que representen una reducción en el costo total de la obra. Es decir, el legislador no concedió una acción de rembolso por concepto de una orden de cambio que represente una reducción en el costo total de la obra. Una lectura integrada de la ley así lo refleja. Veamos.

El Art. 2.007 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4057, dispone cómo se efectúa el pago de arbitrio de construcción. Para ello, la persona responsable de llevar a cabo la obra somete a la Oficina de Finanzas una Declaración de Actividad detallada en la que se describe el costo de la obra. El Director de Finanzas revisa el valor estimado e informa su decisión al respecto para determinar el arbitrio que corresponda. Éste puede aceptar o rechazar el valor estimado de la obra. Una vez se acepte el valor estimado de la obra el contribuyente deberá pagar el arbitrio en un término de quince días laborables.

Al hacer el pago del arbitrio, el contribuyente tiene tres opciones. Éstas son: (1) pagar el arbitrio aceptando la determinación del Director de Finanzas **como una determinación final**; (2) negarse a efectuar el pago, lo cual implica detener la construcción y solicitar la correspondiente revisión judicial o; (3) pagar el arbitrio bajo protesta y solicitar por escrito la reconsideración de la determinación preliminar del Director de Finanzas. En todas estas situaciones, una vez se reciba el pago identificando el arbitrio del que se trata, el oficial de la Oficina de Recaudaciones de la División de Finanzas "emitirá un **recibo de pago** identificando que se trata del arbitrio sobre la actividad de construcción". 21 L.P.R.A. sec. 4057.

A su vez, el Art. 2.007 de la Ley de Municipios Autónomos, *supra*, especifica el procedimiento para las reclamaciones relacionadas con el pago de arbitrios. A estos fines, la Asamblea Legislativa estableció el proceso para el pago de deficiencia, el rembolso de arbitrios de construcción pagados en exceso y el reintegro de éstos.

En el caso de deficiencias, el Artículo 2.007 de la Ley de Municipios Autónomos, *supra*, reconoce el derecho del municipio a solicitar evidencia acreditativa del costo final del proyecto para verificar aumentos en el valor final de construcción con el propósito de imponer pago de

arbitrios por el aumento en el valor de la obra.[55] Igualmente, el articulado dispone el proceso cuando procede una acción de rembolso y en las que deriva una de reintegro del pago de arbitrios de construcción. Todas estas instancias están reguladas en el inciso (e) del citado artículo.

Contrario a lo concluido por la Opinión mayoritaria, el Art. 2.007 de la Ley de Municipios Autónomos, *supra*, reconoce y establece claramente las circunstancias en las que un contribuyente tiene derecho a que se le devuelva el pago de un arbitrio. Ello incluye las circunstancias del caso ante nuestra consideración. Las acciones para solicitar la devolución de lo pagado por arbitrios de construcción son: la acción de rembolso y la de reintegro. Examinemos sus diferencias.

La acción de rembolso está regulada en el primer párrafo del inciso (e) del Art. 2.007 de la Ley de Municipios Autónomos, 21 L.P.R.A. 4057 (e). Ésta se limita a proveerle al contribuyente la oportunidad de recobrar el pago en exceso como consecuencia de un error al presentar la declaración del valor de la obra que éste informó para la determinación del arbitrio. En estas circunstancias, nos encontramos ante un mero cómputo en cuya ecuación no media

---

[55]Nótese que ello es cónsono con el Art. 2.002 de la Ley de Municipios Autónomos que permite computar arbitrios sobre los cambios en el proyecto que constituyan una ampliación. 21 L.P.R.A. sec. 4052. La enmienda al Art. 2.007 surge de la aprobación de la Ley Núm. 258-2004.

el hecho de que haya comenzado o no la obra, y mucho menos si han ocurrido órdenes de cambio. Ese inciso parte de la premisa de que el contribuyente pagó arbitrios en exceso a lo que correspondía conforme a la Declaración de Actividad. Recuérdese que al hacer el pago de arbitrios para poder comenzar la obra de construcción, se acepta la determinación del Director de Finanzas como una determinación final. Por ello, el rembolso, puede suceder cuando existe un error matemático al determinar el arbitrio de construcción o cuando se paga bajo protesta y solicita por escrito la reconsideración de la determinación preliminar del Director de Finanzas conforme dispone la ley. En este último panorama el Director de Finanzas notificará la determinación final que realice en cuanto al arbitrio que corresponda y la notificará al contribuyente.

Además, de la acción del rembolso, el propio Art. 2.007 de la Ley de Municipios Autónomos, *supra*, establece el derecho a reclamar un reintegro por no culminarse o realizarse la obra. En este sentido, la acción de reintegro obliga a que se determine la etapa en la cual se encuentra la obra. La fase del proyecto por el cual se pagó el arbitrio y solicita reintegro es determinante para establecer la cantidad de dinero a la que tiene derecho el contribuyente. En la acción de reintegro, el contribuyente podrá obtener la totalidad de lo pagado en concepto de arbitrios de construcción si no ha comenzado la construcción de ésta. En caso de que hubiera comenzado a

construir o hubiere comenzado cualquier actividad de construcción, el contribuyente tendrá derecho a solamente el cincuenta porciento de reintegro. Mun. de Utuado v. Aireko Const. Corp., 176 D.P.R. 897, 906-907 (2009).

Ahora bien, contrario a lo expresado por la Opinión mayoritaria, una lectura del Art. 2.007 de la Ley de Municipios Autónomos, supra, demuestra que el legislador reguló el tiempo que posee el contribuyente para solicitar el reintegro de la totalidad o la mitad del arbitrio de construcción pagado. Para ello, el Art. 2.007 de la Ley de Municipios Autónomos, supra, dispuso que:

> **[n]o habrá lugar para solicitar reintegro de suma alguna transcurridos seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio** determinado para una obra en particular. (Énfasis nuestro.)

Lo antes expuesto demuestra claramente la intención del legislador de prohibir de forma absoluta la devolución del pago por concepto de arbitrios, una vez hayan transcurrido seis meses desde la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular. Como vimos, el legislador dispuso que el Oficial de Recaudaciones de la División de Finanzas expide el recibo de pago del arbitrio determinado cuando éste se paga. Por ende, el término de seis meses comienza a transcurrir desde que se expidió el recibo de pago necesario para comenzar la obra.

El legislador, al vislumbrar el proceso para el pago de arbitrios de construcción, consideró la realidad de las

órdenes de cambio. Dispuso que una ampliación del valor estimado de la obra obliga al pago del arbitrio correspondiente. Esa expresión no implica ni puede constituir un fundamento para concluir que el legislador desconocía o no atendió el efecto de situaciones en las que haya una disminución del valor estimado de la obra. El legislador estableció un proceso para el recobro de arbitrios en exceso en el cual se determine que procede un reintegro. De igual forma, determinó la cantidad por la cuál sería el reintegro al implantar que procede su totalidad antes de comenzada la obra y solo la mitad una vez ésta fue iniciada. Claro está, ello siempre y cuando se reclame dentro del periodo de seis meses desde que se expidió el recibo de pago del arbitrio de construcción, es decir, cuando éste se pagó.

B.

En cuanto al pago de patentes aplica el mismo principio esbozado con relación al pago de arbitrios de construcción.

La Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada, 21 L.P.R.A. sec. 651, *et seq.*, permite a los municipios el cobro de una contribución a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, o a la venta de cualquier bien a cualquier negocio financiero o negocio dentro de sus límites territoriales. Véase, 21 L.P.R.A. secs. 651a(17), 651b.

Similar al cómputo de los arbitrios de construcción, el cálculo de la patente emplea como base la declaración sobre el volumen de negocios que realiza el contribuyente. 21 L.P.R.A. secs. 651f, 651i. El contribuyente pagará por anticipado la patente que corresponda. 21 L.P.R.A. sec. 651j.

Al aprobar la Ley de Patentes, el legislador auscultó el supuesto en el que el contribuyente pague una cantidad mayor a la que corresponda o una cantidad menor. Al hacerlo, consideró restringir acreditar o reintegrar el exceso del pago de patentes a cuando se determine que haya una deficiencia. 21 L.P.R.A. sec. 651n, 652e.

Por ello, la Sec. 34 de la Ley de Patentes, 21 L.P.R.A. sec. 652f, que rige los reintegros y créditos por el pago de patentes dispone que éste será de "…aplicación **únicamente** cuando el Director de Finanzas determine y notifique una deficiencia…". 21 L.P.R.A. sec. 652e. A estos efectos, el referido artículo establece que cuando hubo un pago en exceso de patentes, el monto de éste se acreditará contra cualquier patente sobre volumen de negocio o plazo de la misma entonces exigible a la persona, y cualquier remanente se reintegrará inmediatamente a la persona.

Ahora bien, la Sec. 34 de la Ley de Patentes, *supra*, limita el tiempo en el cual se puede solicitar el reintegro, crédito o rembolso del pago en exceso. El mismo está atado a un término de cuatro años desde que se presentó la declaración de volumen de negocios o tres años

desde que se pagó la patente. De forma expresa, el artículo establece el efecto de no presentar la reclamación a tiempo al disponer que **"no se concederá o hará crédito o reintegro alguno después del vencimiento de aquél que dichos períodos expire más tarde"**.

La Ley de Patentes consideró que el periodo de prescripción podía renunciarse cuando el Director de Finanzas y el contribuyente acuerden prorrogar el periodo que tiene el Director de Finanzas para la tasación y cobro de una deficiencia. Entonces, dentro de ese término se podrá radicar una solicitud de crédito o reintegro conforme dispone la Sec. 34 de la Ley de Patentes, 21 L.P.R.A. sec. 652f.

De acuerdo con lo anterior, destaca que la Ley de Patentes contiene un procedimiento detallado para la solicitud de reintegro y crédito del pago por exceso de patentes. Éste está vinculado al cobro de deficiencias. El estatuto contiene explícitamente el periodo prescriptivo para la acción de reintegro de patentes pagadas en exceso. Igualmente, establece las excepciones para no aplicar el periodo prescriptivo.

III

En el caso de autos, nos encontramos realmente ante una solicitud de reintegro por el pago de arbitrios de construcción que excede el término de seis meses dispuesto que confirió el legislador y una solicitud para el

reintegro de patentes que excede los términos contemplados en la legislación.

La parte recurrida pagó la suma exacta determinada al comienzo de la obra para las patentes y arbitrios de construcción. Por tanto, en el caso de los arbitrios de construcción, no estamos ante la realidad jurídica ni de hechos en la que aplica una acción de rembolso. La Opinión mayoritaria reconoce ese hecho al explicar que Muñiz Burgos, Inc. no entendió que el pago de arbitrios fue erróneo o que la declaración del municipio en cuanto al valor de la obra y los arbitrios computados era incorrecta. Como establecimos, al pagar Muñiz Burgos, Inc. los arbitrios, y conforme dispone el Art. 2.007 de la Ley de Municipios Autónomos, *supra*, aceptó el arbitrio impuesto por el Director de Finanzas como una determinación final. Así, no estamos ante una acción de rembolso contemplada en el primer párrafo del inciso (e) del Art. 2.007.

La solicitud de Muñiz Burgos, Inc. es el reintegro parcial del arbitrio pagado. Sostiene su reclamo en la orden de cambio que disminuyó el valor de la obra. El legislador conocía de la posibilidad de que la obra se afecte con las órdenes de cambio, pero no reconoció una acción de devolución de rembolso en estos casos. De esta forma evitó la posibilidad de afectar los ingresos municipales y provocar un caos en la planificación presupuestaria, mediante la reducción de los costos de la obra a través de las órdenes de cambio. La acción de

rembolso fue limitada a aquellos pagos en exceso al arbitrio que correspondía según la declaración de actividad o cuando se pagó bajo protesta. De otra parte, la acción de reintegro estatuida en el Art. 2.007 de la Ley de Municipios Autónomos, *supra*, identificó el derecho a reintegro de arbitrios pagados antes de comenzar la obra y al momento de iniciada. Dependiendo de la fase en que la obra se encuentre será la cuantía del reintegro a recibirse. Asimismo, implantó un término para que proceda el reintegro al señalar que esta acción debe ejercerse dentro del término de seis meses desde que se expidió el recibo de pago del arbitrio determinado. Así lo dispuso el legislador en un lenguaje claro que no necesita interpretación alguna.

Los hechos demuestran que el término de seis meses para solicitar el reintegro por el pago de arbitrios de construcción había transcurrido. Por tanto, independiente de las razones para ello, Muñiz Burgos, Inc. no tiene derecho al reintegro de los arbitrios pagados cuya determinación aceptó como final. Lo mismo sucede en cuanto al pago de patentes, en cuyo caso no existe una determinación de deficiencia por la cual procede el reintegro o crédito por el alegado pago de patentes en exceso. Cualquier acción para ello prescribió, debido a que han transcurrido más de cuatro años desde la declaración de volumen de negocios presentada por Muñiz Burgos, Inc., o tres años desde el pago de la patente.

Los fundamentos expuestos en Opinión mayoritaria conllevan derogar el término estatuido por el legislador e ignorar que incluso la orden de cambio más drástica que pueda tener una obra de construcción –la de no construir la totalidad de ésta– tiene un término de seis meses para su ejercicio. El no cumplir con el referido término impediría el recobro total del arbitrio pagado. Sin embargo, la postura que sostiene la Opinión mayoritaria reconoce a las restantes órdenes de cambio, como la que nos ocupa, una acción de reintegro que genera mayores derechos para recobrar lo pagado en exceso, aun cuando haya transcurrido ese término. De esta forma se vulnera la razón de ser del término de seis meses.

En cuanto a las patentes, la Opinión mayoritaria determina un nuevo punto de partida por el cual se puede solicitar el reintegro del pago de patentes en exceso e ignora el mecanismo dispuesto por el legislador para atender situaciones en las que se reclama el reintegro o crédito. Como establecimos, el legislador específicamente determinó cuándo se puede conceder esa prórroga en acuerdo con el Director de Finanzas. Esa situación no responde a los hechos ante nuestra consideración.

La Opinión mayoritaria concluye que no procede el reclamo de Muñiz Burgos, Inc. al no poder avalar su pretensión de activar el término prescriptivo desde que se aprobó la orden deductiva, luego de aceptada y finalizada la obra. Ello, debido a que no estamos en condiciones de

determinar a qué respondió la modificación de la obra. A nuestro juicio, la razón no es determinante por los fundamentos que hemos expuesto en esta Opinión.

No podemos obviar que los arbitrios de construcción, al igual que las patentes, constituyen el ingreso principal de los gobiernos municipales. Es por ello que el legislador contempló cualquier devolución de esos ingresos municipales en términos cortos que no exceden el año fiscal. La interpretación que hoy se pretende adoptar transgrede no solamente la letra de la ley, sino la política pública de proteger al erario municipal.

IV

Por los argumentos antes expresados, concurro respetuosamente con el dictamen de la Opinión Mayoritaria y la Sentencia emitida por el Tribunal.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado