Ivelisse Rodríguez, demandante, *v.* Dr. Armando Barreto, demandado.

Número: O-82-406        Resuelto: 15 de noviembre de 1982

*Ernesto F. Rodríguez Surís*, de *Miranda Cárdenas, De Corral & Rodríguez*, abogado del demandado; *Antonio J. Amadeo Murga*, abogado del demandante.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

El Tribunal de los Estados Unidos para el Distrito de Puerto Rico nos ha certificado la siguiente cuestión de derecho:

Si el período prescriptivo de dos años que establece la última oración del artículo 41.090 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4109, respecto a demandas por impericia médica se computa desde la fecha en que tuvo lugar la intervención médica que alegadamente causó los daños o desde la fecha en que la parte demandante supo o debió haber sabido de los daños.

Nos informa el Tribunal los hechos que sirven de trasfondo a la cuestión. Para fines de junio de 1977 el doctor Barreto le practicó a la señora Rodríguez una mamoplastía con el propósito de agrandarle los senos. La operación consistió en insertarle unas bolsas.

En o alrededor de julio de 1980 la señora Rodríguez sintió dolor y observó una protuberancia en el seno derecho. La zona afectada había adquirido un color rojizo y verdoso. La señora Rodríguez acudió nuevamente a las oficinas del doctor Barreto, quien no halló nada en los síntomas. La paciente se trasladó entonces a Washington, donde visitó las oficinas de otro cirujano plástico. El cirujano descubrió una infección en el seno derecho y operó a la señora Rodríguez, removiéndole las bolsas colocadas por el doctor Barreto. Días más tarde se repitió la operación en el seno izquierdo.

El 29 de mayo de 1981 la señora Rodríguez demandó al doctor Barreto en el Tribunal de los Estados Unidos para el Distrito de Puerto Rico. La demandante alega que la acción no ha prescrito por razón de que el plazo de dos años a que se refiere el Art. 41.090 del Código de Seguros, 26 L.P.R.A. sec. 4109, no comienza a contarse hasta que ella descubrió el daño.

El referido artículo dispone:

(1) Los términos de prescripción contenidos en esta sección serán los únicos aplicables a las acciones de daños por culpa o negligencia (*malpractice*) que se inicien contra profesionales en el cuidado de salud e instituciones para el cuidado de salud.

La acción por alegados daños por culpa o negligencia (*malpractice*) comenzará, independientemente de lo dispuesto en otra ley, dentro de un año a partir de la fecha en que ocurrió el daño que dio lugar a la acción, o dentro de un año desde el momento en que el daño fue descubierto o debió haber sido descubierto con la debida diligencia. En ningún caso se podrá iniciar la acción más tarde de dos años, desde la fecha en que ocurrió el daño que dio lugar a la causa de acción.

¿Cuál es la verdadera estructura de esta disposición? ¿Cuál es la relación entre el plazo de un año y el de dos que establece el artículo? ¿Tienen ambos el mismo punto de partida? Veamos el historial de las frases que motivan la certificación.

El Código de Seguros de Puerto Rico tiene por fuentes

los de Arizona, Kentucky, Michigan y Washington. 9 *Diario de Sesiones de la Asamblea Legislativa* 561 (1957). Las frases en cuestión provienen, no obstante, de la Ley Núm. 74 de 30 de mayo de 1976, cuyo escaso historial legislativo no arroja luz sobre las fuentes empleadas. Para su hallazgo conviene examinar los criterios utilizados en el Derecho norteamericano y el civil para la solución de estos pleitos.

La doctrina generalizada antiguamente en el Derecho norteamericano era que la prescripción comenzaba a contar en este género de causas desde el momento en que ocurre el daño. Si el daño era descubierto después de expirar el plazo prescriptivo, la persona perjudicada quedaba desprovista de remedio. W. L. Prosser, *Handbook of the Law of Torts*, 4ta ed., St. Paul, Minnesota, West Publishing Co., 1971, Cap. 5, Sec. 30, pág. 144. Varios estados de la Unión Americana aún conservan esta regla. D. W. Louisell y H. Williams, *Medical Malpractice*, New York, Matthew Bender, 1983, Vol. 1, Sec. 13.15, pág. 13-56 y ss.

La regla difería fundamentalmente de la prevaleciente en el Derecho civil. El Art. 1868 de nuestro Código Civil, 31 L.P.R.A. sec. 5298, decreta, por ejemplo, que la acción por las obligaciones derivadas de la culpa o negligencia prescribe por el transcurso de un año "desde que lo supo el agraviado".

Hacia la formulación de un criterio paralelo a este último es que los tribunales y las asambleas legislativas de los estados norteamericanos se fueron moviendo con el tiempo. La situación actual se ha descrito del modo siguiente, American Law Institute, *Restatement of the Law, Second: Torts 2d*, St. Paul, Minnesota, American Law Institute Publications, 1979, Vol. 4, Sec. 899, comentario *e*, págs. 440, 444–445:

> Un grupo de casos en que los tribunales se han apartado extensamente de la regla anterior al efecto de que el plazo prescriptivo transcurre, aunque la parte demandante no

tenga conocimiento del daño, envuelve demandas por impericia médica. . . .

. . . . . . . .

En una ola de sentencias recientes estos mecanismos [los creados para evitar la aplicación de la antigua regla] han sido reemplazados y, enfrentándose directamente al asunto, las cortes han resuelto que el plazo no comienza a contar hasta que la parte demandante ha descubierto en efecto el hecho de que ha sufrido daño o debía haberlo descubierto mediante el uso de diligencia razonable. . . .

Véanse también: Prosser, *loc. cit.*; S. Sacks, *Statutes of Limitations and Undiscovered Malpractice*, 16 Clev.-Mar. L. Rev. 65 (1967); Note, *Medical Malpractice—Statute of Limitations Begins to Run when the Patient Discovers He Has Been Injured*, 30 Ohio St. L.J. 425 (1969); T. F. Lambert, *Comments on Recent Important Personal Injury (Tort) Cases*, 28 NACCA Law Journal 63, 158 y ss. (1961). En la actualidad treinta y dos jurisdicciones en Estados Unidos utilizan como punto de partida para el inicio de la prescripción extintiva el descubrimiento del daño y varias de ellas le añaden el concepto de deber descubrir el daño con la debida diligencia. Louisell y Williams, *loc. cit.* Respecto a la norma federal, véase *United States* v. *Kubrick*, 444 U.S. 111 (1979).

Vemos así que la frase "desde el momento en que el daño fue descubierto o debió haber sido descubierto con la debida diligencia", empleada en el Art. 41.090 de nuestro Código de Seguros, según enmendado, se origina en el desarrollo reseñado del Derecho norteamericano.(¹) También podemos

---

(¹)No hay diferencia perceptible entre el criterio del "descubrimiento del daño" y la norma civilista referente al momento "desde que lo supo el agraviado". La glosa del Art. 1868 del Código Civil es, en consecuencia, de utilidad para la interpretación de tal parte del Código de Seguros. Véanse: *González* v. *Pérez*, 57 D.P.R. 860 (1941); *Cruz* v. *González*, 66 D.P.R. 212 (1946); *Rivera Encarnación* v. *E.L.A.*, 113 D.P.R. 383 (1982); Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 861; J. Castán Tobeñas, *Derecho civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, 1978, T. 1, Vol. 2, pág. 963; A. Borrell Maciá, *Responsabilidades Derivadas de Culpa Extracontractual Civil*, 2da ed., Barce-

ver que la frase referente a que ninguna acción se iniciará más tarde de dos años "desde la fecha en que ocurrió el daño que dio lugar a la causa de acción", toma como punto de partida del cómputo la antigua norma del Derecho común. Son dos puntos distintos de arranque.

El plazo de dos años representa un plazo tope. La utilización de este recurso es conocida tanto en el Derecho común como en el civil. El Art. 60 del Código suizo de las obligaciones establece, por ejemplo, un plazo tope de diez años a partir del hecho culposo, se conozcan o no los daños, para interponer una acción por responsabilidad civil. Véanse: Borrell Maciá, *ante*, pág. 347, y Louisell y Williams, *ante*, Sec. 13.07, pág. 13-20 y ss. Cualquier posible cuestión que pueda suscitar la fijación de un plazo tope en unos casos, a exclusión de otros, no ha sido certificada a este Tribunal y es improcedente que nos expresemos sobre el tema.

En consideración a lo anterior, contestamos la pregunta certificada en la siguiente manera. *El período de dos años que establece la última oración del Art. 41.090 del Código de Seguros se computa desde la fecha en que ocurrió el daño, que en este caso es el momento de la primera intervención quirúrgica, y no desde la fecha en que lo supo o debió saberlo la parte agraviada.*

El Juez Asociado Señor Negrón García emitió voto disidente, al cual se unieron los Jueces Asociados Señores Dávila e Irizarry Yunqué.

---

lona, Ed. Bosch, 1958, pág. 346. La referencia en el Código de Seguros al momento en que el daño "debió haber sido descubierto con la debida diligencia", puede naturalmente conducir, bajo determinadas circunstancias, a resultados distintos a los que obligue el Código Civil.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué.

San Juan, Puerto Rico, a 16 de noviembre de 1982

Por primera vez en Puerto Rico, en aras de una observancia legislativa estrictamente gramatical se produce un resultado no sólo injusto, sino ajeno a principios básicos de hermenéutica. "Tres postulados básicos inspiran nuestra decisión. Primero, que en su función normativa y remedial el Derecho atiende y tutela necesidades, problemas y experiencias del ser humano. Éste, como autor y receptor de la ley, le nutre e inyecta en gran medida a las soluciones que provee, su conocimiento y juicio valorativo ideológico, moral y económico. Segundo, que la norma legal no es enemiga —o no debe serlo— de la verdad científica. Son entera y perfectamente reconciliables. Y tercero, que la realidad científica, al igual que los factores sociales contemporáneos que circundan la vida del derecho —*Rivera Pitre* v. *Galarza Martínez*, 108 D.P.R. 565, 573 (1979)— no pueden ser descartados por los tribunales en abono de un estado negatorio de la realidad de las cosas o de la personalidad humana. Expongamos los hechos." *Moreno Álamo* v. *Moreno Jiménez*, 112 D.P.R. 376; 377–378 (1982).

I

La demandante Rodríguez se sometió con el demandado Dr. Armando Barreto a una mamoplastía a fines del mes de junio de 1977. Transcurrió el tiempo sin que se manifestaran signos físicos ostensibles de alguna anormalidad, irregularidad o daño hasta julio de *1980*, fecha en que ella observa "una extraña protuberancia en su seno derecho". Visitó al galeno, quien le indicó que esa sintomatología era menor. Viajó a los Estados Unidos y, tras ser examinada por un cirujano plástico, éste le diagnosticó una infección.

Para curar ese mal o daño se sometió a dos intervenciones quirúrgicas. Demandó al doctor Barreto en el Tribunal de los Estados Unidos para el Distrito de Puerto Rico, alegando negligencia y reclamando daños. Dicho foro nos certifica la interrogante que resolvemos en torno al punto de partida para computar una causa de acción de esta naturaleza.

La opinión del tribunal interpreta correctamente, desde la perspectiva de literalidad, el Art. 41.090 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4109, solamente si se equipara el concepto daño con el de conducta culposa. Tal solución no procede.

## II

Nuestro disentir se funda en que el derecho no existe para exigir o perpetuar cosas imposibles, absurdas, inútiles o innecesarias. *Pueblo* v. *Andreu González*, 105 D.P.R. 315, 321 (1976). Tiene como objeto, tutelar derechos, relaciones y conducta de los seres humanos. No se legisla crudamente para proteger piedras u objetos inanimados, sino con referencia a las personas. Este principio rector debe guiarnos al interpretar toda ley. En lo posible, debemos abstenernos de refrendar una explicación irracional en aras de la intención legislativa. Con mayor razón si perpetuamos una injusticia. Así ocurre en el caso de autos. Nos explicamos.

Toda causa de acción por impericia profesional (*malpractice*) se descompone en tres elementos: (1) acción u omisión; (2) daños; (3) relación causal entre éstos. Es a base de estos tres ingredientes que puede apreciarse el término prescriptivo en la Ley. Así lo reconoce el lenguaje referente a la limitación de que en "ningún caso se podrá iniciar la acción más tarde de dos años desde la fecha en que *ocurrió el daño* que dio lugar a la *causa de acción*". 26 L.P.R.A. sec. 4109. (Énfasis suplido.) Nótese que deslinda el concepto de daños y el de causa de acción. ¿Qué explicación tiene? La respuesta se obtiene al leerlo en interacción con la defi-

nición específica de "daño" provista en el inciso 4 de la Sec. 1 de la Ley Núm. 74. Reza: "Significa *cualquier daño ocasionado* a un paciente por error, omisión, culpa o negligencia *como consecuencia de o inherentes* a servicios profesionales brindados o que debieron haber sido brindados por un profesional en el cuidado de salud o una institución para el cuidado de salud." 26 L.P.R.A. sec. 4101(4). (Énfasis suplido.)

De los textos transcritos se advierte, pues, que daño no es equivalente ni sinónimo del acto u omisión médica negligente que lo provoca. Por el contrario, se define como el daño o perjuicio "consecuencia" de esa acción culposa. Bajo esta perspectiva la Ley reconoce la realidad y dinámica humanas de que médicamente habrá ocasiones en que el acto u omisión negligente genera un daño en forma simultánea o coetánea; y que, en otras, el daño sobreviene y se manifiesta con posterioridad. ¿Cómo entonces fijar un plazo absoluto de dos años a lo que constituye un curso impredecible y que oculta la propia naturaleza?(¹) *Cf. United States* v. *Kubrick*, 444 U.S. 111 (1979).

En virtud de lo expuesto, no podemos suscribir la tesis de que el Art. 41.090 consagra la antinomia de reconocer que el término prescriptivo de un año comienza "desde el momento en que el daño fue descubierto" para luego cercenar ese derecho al limitarlo a un plazo tope de dos años. Como intérprete de la justicia, ante distintos significados, el juez debe optar por aquel congruente con su misión rectora y el espíritu legislativo. Existen diversos criterios de hechos con relación a la determinación de la fecha del conocimiento del daño. *Rivera Encarnación* v. *E.L.A.*, 113 D.P.R. 383 (1982).

---

(¹) Que el legislador no impuso términos absolutos se desprende de los incisos 2 y 3, respectivamente, *extendiendo por tiempo indefinido el término en casos en que* se impidió el descubrimiento del daño por fraude, ocultación o falsa representación o, en acciones de menores o incapacitados, computándolo a partir de esa incapacidad.

Bajo el enfoque propuesto, el plazo de dos años representa un límite más bien de "caducidad" que no es posible extender más por interrupciones extrajudiciales. El que se haya utilizado el término "prescriptivo" para cubrir supuestos de "caducidad" no debe extrañar a nadie, como tampoco afecta la cuestión. *Srio. del Trabajo* v. *Tribunal Superior,* 91 D.P.R. 856, 863 (1965). Pero el período de un año siempre comienza desde que se obtiene el conocimiento o descubrimiento real o constructivo del daño. Es desde ese momento que la causa de acción es realizable y nace. Mientras no hay daño, no se completa la trilogía de elementos que constituyen una causa de acción. En el caso de autos, se alega que el daño surgió al manifestarse externamente la infección en el seno derecho, por una protuberancia color rojiza y verdosa. Esa fecha es la determinante. *Ortiz* v. *Municipio de Orocovis,* 113 D.P.R. 484 (1982).

El estudio investigativo de la intención legislativa es parco y limitado. En tal situación, la interpretación no debe consagrar inequidades, ser restrictiva ni evitar los planteamientos de inconstitucionalidad que la propia opinión implícitamente reconoce en su epílogo. Solo así cumplimos con nuestro mandato de hacer justicia y sostener al Poder Legislativo. *Milán Rodríguez* v. *Muñoz,* 110 D.P.R. 610, 618 (1981).