La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
La Ley de Municipios Autónomos del Estado Libre Aso-ciado de Puerto Rico de 1991 (Ley de Municipios Autóno-mos) y la Ley de Patentes Municipales establecen términos prescriptivos para solicitar el reembolso del pago en exceso de un arbitrio de construcción o de una patente. Nos co-rresponde determinar el punto de partida de estos térmi-nos en aquellos casos en que, habiéndose pagado los arbi-trios de construcción y patentes municipales según computados originalmente, el dueño de la obra aprueba un cambio de orden que reduce la partida original.
*670 I
Muñiz Burgos, Inc. (Muñiz Burgos) y la Autoridad de Edificios Públicos perfeccionaron un contrato para cons-truir una escuela a un costo de $17,299,000. Acto seguido, el 9 de octubre de 2000, Muñiz Burgos pagó $85,252.15 en patentes municipales y $278,741.48 en concepto de arbi-trios de construcción. No hay controversia en cuanto a que estas cantidades corresponden al cómputo correcto aplica-ble en ese momento a ambos cargos.
Más de siete años después del pago de los arbitrios de construcción y de las patentes municipales, el 18 de diciembre de 2007, la Autoridad de Edificios Públicos aprobó la Orden de Cambio Núm. 2(1) que redujo el costo de la obra a $17,014,029.52, es decir, $248,970.48 menos que el costo original.(2) Ante ello, el 13 de febrero de 2008, Muñiz Burgos solicitó un reembolso al municipio de Yauco (Municipio). Argumentó que esa reducción en costo afectó directamente la cantidad que debía pagar en concepto de arbitrios de construcción y patentes municipales, dado que dichos cargos se calculan en proporción al costo total de la obra. Según su cálculo, el costo reducido de la obra dismi-nuyó la cantidad que debió recibir el Municipio en concepto de arbitrios de construcción y patentes municipales a $6,251.35.(3) El Municipio denegó el reembolso por enten- *671 der que tal reclamación estaba prescrita, pues habían transcurrido siete años desde que se efectuó el pago original y la Ley de Patentes Municipales establece un término prescriptivo para la acción de reembolso de patentes de tres años desde que se hace el pago, o cuatro años desde que se rinde una declaración, lo que ocurra más tarde.(4)
La Autoridad de Edificios Públicos envió una carta al Municipio, con fecha de 20 de febrero de 2008, en la cual certificó que Muñiz Burgos había ejecutado el proyecto de construcción de la Escuela Superior Urbana de Yauco, cuya aceptación final fue el 25 de mayo de 2004. En la carta señaló que “ [e]sta certificación se emite con el propósito de que el Municipio le pueda proveer la Carta de Relevo, re-lacionado al pago de arbitrios y patentes, según lo requiere el contrato”.(5)
Ante la negativa del Municipio, el 20 de junio de 2008, Muñiz Burgos presentó la demanda que nos ocupa. Según el demandante, su causa de acción nació el 18 de diciembre de 2007 cuando la Autoridad de Edificios Públicos aprobó la Orden Deductiva Núm. 2 que redujo el costo total de la obra y, por consiguiente, el cálculo por arbitrios de cons-trucción y patentes municipales.(6) Por su parte, el Muni- *672 cipio sostuvo que “el hecho de que la Orden Deductiva Núm. 2 modificara el monto del proyecto y tuviera reper-cusiones en el pago de la patente no fue contemplado por el legislador, por lo que el punto de partida para calcular el término prescriptivo es cuando se efectúa el pago”.(7) Am-bas partes solicitaron sentencia sumaria y el 23 de noviem-bre de 2010, el Tribunal de Primera Instancia declaró “con lugar” la petición de sentencia sumaria presentada por Muñiz Burgos y ordenó al Municipio que le pagara $6,251.35, más intereses legales, y $1,250 en honorarios de abogado. En su sentencia, el Tribunal de Primera Instan-cia concluyó que la causa de acción de Muñiz Burgos nació con el cambio en el costo de la obra y, por consiguiente, que el término prescriptivo aplicable comenzó a correr desde ese momento.
Inconforme con la decisión, el Municipio recurrió al Tribunal de Apelaciones, que confirmó la sentencia del foro de instancia en todos sus extremos. El tribunal intermedio coincidió con el foro primario en que la Orden Deductiva Núm. 2 constituyó una nueva “declaración” que activó un nuevo término de cuatro años para solicitar un reembolso.(8) En cuanto a la partida de honorarios, el Tribunal de Apelaciones concluyó que se trató de un ejercicio legítimo de la discreción judicial.
El Municipio recurrió ante este Tribunal mediante Peti-ción de certiorari en la cual alegó la comisión de dos errores. En primer lugar, insiste en que la causa de acción está prescrita, toda vez que el pago original fue el 9 de *673 octubre de 2000 y la solicitud de reembolso se hizo el 13 de febrero de 2008; es decir, fuera del término establecido por la Ley de Patentes Municipales y la Ley de Municipios Autónomos.(9) Según el Municipio:
Alega la apelada que, habiendo cambiado el precio del con-trato mediante la orden deductiva aprobada por el dueño de la obra el 18 de diciembre de 2007, cuando hizo la reclamación de reembolso [febrero de 2008] al Municipio de Yauco [,] todavía no había[n] transcurrido los tres (3) años. Alegación que fue acogida por el Tribunal de [Primera] [I]nstancia modificando de esta forma la letra de la Ley, la cual es clara y no está sujeta a interpretación.
El Legislador no consideró las circunstancias alegadas por la apelada. El punto de partida es desde cuándo se paga, no desde cuándo se aprueba la orden de cambio, que modifica el monto del proyecto computado para el pago de patente. El derecho reconocido por el legislador a solicitar reintegro de patentes lo circunscribe a unas circunstancias particulares y tiene que solicitarse en dicho término so pena de prescripción.
En el caso que nos ocupa, la ley es clara al disponer cuál es el punto de partida para reconocer y [ejercitar] el derecho del reintegro de patentes municipales. Si el legislador hubiera in-teresado circunscribir este derecho al momento de cuándo surge el cambio del costo de la obra, lo hubiera hecho. Sin embargo lo circunscribió a unas circunstancias que él entendió razonables; la fecha en que la declaración fue rendida o desde el pago de patente la que expire más tarde.(10)
En cuanto a la reclamación de reembolso de arbitrios de construcción, el Municipio sostiene que la sección 4057(e) de la Ley de Municipios Autónomos, según enmendada, li-mita el derecho a solicitar reembolso sólo a dos circunstan-cias: (1) cuando el contribuyente haya efectuado el pago y el dueño de la obra la paralice antes de iniciar la construc- *674 ción; (2) cuando el contribuyente haya pagado los arbitrios y, comenzada la obra, el dueño la detenga. Según el Muni-cipio, en la primera situación se le reintegrará la totalidad de los arbitrios pagados y en la segunda, se le reembolsará el cincuenta por ciento de los arbitrios pagados. En ambas situaciones, añade el Municipio, el contribuyente tendrá un término de seis meses para solicitar el reintegro.(11)
En segundo lugar, el Municipio niega haber actuado te-merariamente, según determinó el foro de instancia. Por el contrario, considera que su alegación de que la causa de acción de Muñiz Burgos está prescrita es válida y no justi-fica la imposición de honorarios.
El 2 de diciembre de 2011 expedimos el auto de certiorari. En su comparecencia, Muñiz Burgos sostiene que “[la] orden de cambio deductiva varió retroactivamente el costo de la obra y por lo tanto el monto de los arbitrios y patentes”.(12) Según la parte recurrida, dicho cambio ge-neró un exceso que tenía derecho a recobrar del Municipio. Insiste en que los derechos de arbitrios y patentes se fijan a base del costo contemplado de la obra y, de igual forma, sostiene que la interpretación adelantada por el Municipio conlleva resultados absurdos e irrazonables, a saber, que el recobro de lo pagado en exceso “estaría prescrito aún antes de surgir su causa de acción, lo que sería inconsti-tucional”.(13) Puntualiza este argumento al señalar que si el costo de la obra se hubiera elevado, en vez de reducido, sería lógico concluir que los arbitrios y las patentes aumen-tarían y el Municipio insistiría en que se pagara la diferencia. Finalmente, reitera que el Municipio actuó con temeridad y se justifica la partida de honorarios de abogado. Tomando como base lo anterior, resolvemos.
*675 II
A. La Ley de Municipios Autónomos fue aprobada por la Asamblea Legislativa para otorgar a los municipios un mayor grado de gobierno propio y autonomía fiscal.(14) Posteriormente, esta ley fue enmendada con el propósito de que los municipios ampliaran sus facultades contributivas y pudieran recaudar mayores ingresos para sufragar los servicios que ofrecen a sus habitantes.(15) El poder de los municipios para imponer contribuciones, derechos, licencias y otros cargos está establecido en el artículo 2.002 de la Ley Núm. 81-1991. Entre estas contribuciones se encuentra el arbitrio de construcción, “cuyo pago pueden requerir los municipios antes del comienzo de toda obra que se construya dentro de sus límites territoriales. Para fijar este arbitrio se tomará en consideración el costo total del proyecto, luego de restarle los gastos en concepto de ciertas partidas predeterminadas”.(16) En cuanto a los arbitrios de construcción en particular, la ley dispone lo siguiente:
Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o municipal o del gobierno federal... deberá pagar [un] arbitrio de construcción correspondiente, previo el comienzo de [la] obra.
En estos casos, se pagarán dichos arbitrios al municipio donde se lleve a cabo dicha obra previo a la fecha de su comienzo. En aquellos casos donde surja una orden de cambio *676 en la cual se autorice alguna variación al proyecto inicial, se verificará si dicho cambio constituye una ampliación y de así serlo se computará el arbitrio que corresponda.
En los casos de órdenes de cambio, se aplicará el arbitrio vi-gente al momento de la fecha de petición de la orden de cambio. Entendiéndose, que toda obra anterior se realizó a tenor con los estatutos que a través de los años han autorizado el cobro de arbitrios de construcción en los municipios.
Para los propósitos de la determinación del arbitrio de cons-trucción, el costo total de la obra será el costo en que se incurra para realizar el proyecto luego de deducirle el costo de adqui-sición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, per-misos, consultoría y servicios legales.(17)
Según el Artículo 2.007 de la Ley Núm. 81-1991, supra, toda persona natural o jurídica responsable de llevar a cabo una obra como dueño, o su representante, “deberá someter ante la Oficina de Finanzas del municipio en cuestión una Declaración de Actividad detallada por renglón que describa los costos de la obra a realizarse”.(18) Una vez presentada la declaración, el Director de Finanzas municipal determinará la cantidad que deberá pagarse en concepto de arbitrio.(19) Por su parte, el dueño de la obra podrá aceptar o rechazar el arbitrio impuesto por el municipio sobre el valor estimado de la obra y, según sea el caso, pagarlo, pagar bajo protesta y solicitar reconsideración o impugnarlo. Por otra parte, “[s]i el contribuyente hubiese pagado en exceso, el municipio deberá reembolsar el arbitrio pagado en exceso dentro de los treinta (30) días después de la notificación al contribuyente”.(20) Además, la ley establece el procedimiento que se debe seguir cuando ha habido un pago deficiente o, si por el contrario, corresponde un reembolso. En lo pertinente, la ley dispone el *677 procedimiento para solicitar reintegro cuando el contribu-yente ha efectuado el pago de los arbitrios y el dueño de la obra decide detenerla:
Si la obra hubiere comenzado y hubiere ocurrido cualquier actividad de construcción, el reintegro se limitará al cincuenta por ciento (50%). El reintegro se efectuará dentro de los treinta (30) días siguientes a la fecha en que se presente con [sic] el Director de Finanzas la solicitud de reintegro. No ha-brá lugar para solicitar reintegro de suma alguna luego de transcurridos seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular.
El municipio podrá solicitar al desarrollador o contratista, fuese público o privado, evidencia acreditativa sobre el costo final del proyecto para verificar aumentos en el valor final de construcción, con el propósito de imponer pago de arbitrios por el aumento en valor de la obra.(21)
De esta forma, la Ley de Municipios Autónomos estable-ció un procedimiento detallado para situaciones en las que la declaración sobre el valor de la obra presentada por el desarrollador o contratista es menor al valor real final, ya sea por error, intencionalmente o producto de un aumento en el costo de la obra. En esos casos, el municipio podrá exigir el pago de la deficiencia. De esa manera, se protege al erario municipal de que los dueños de las obras subesti-men su valor con el propósito de pagar menos arbitrios. Igualmente, el aumento posterior en el valor de la obra producto de un cambio de orden faculta al municipio a co-brar los arbitrios correspondientes a dicho aumento.
Sin embargo, la ley no establece un procedimiento claro para el caso contrario, es decir, para cuando el cambio de orden resulta en que el valor final de la obra sea menor al inicialmente proyectado. Como vimos, en todo momento la ley supone que el cambio de orden aumentará el costo de la obra y, por lo tanto, la cantidad de arbitrios a pagar. Aun así, provee una regla general en el Artículo 2.002 (21 *678 L.P.R.A. sec. 4052(d)), el cual establece que los arbitrios se deben computar y ajustar al costo final de la obra y que, de haber cambios de órdenes, se aplicará el arbitrio vigente en ese momento. Esto opera tanto a favor del municipio cuando el valor de la obra aumenta, como a favor del dueño de la obra cuando el valor disminuye.
Por su parte, el Artículo 2.007 (21 L.P.R.A. sec. 4057(e)) atiende detalladamente el proceso para subsanar deficiencias en el pago de arbitrios a favor del municipio, pero en lo que se refiere al reembolso de pagos en exceso, tan sólo menciona el supuesto e impone al municipio un término para efectuar el reembolso después de verificado el exceso, pero no establece un procedimiento claro para ello. Esta sección dispone un término prescriptivo de seis meses para la acción de reembolso, pero lo hace en el contexto de obras cuya construcción se detiene, antes o después de iniciada. Hay, pues, un vacío estatutario en lo que respecta a cómo y cuándo se debe reclamar la diferencia en arbitrios cuando la obra no se detiene, sino que surge una disminución en el costo final de la obra producto de una orden de cambio.
En Mun. de Utuado v. Aireko Const. Corp. tuvimos la oportunidad de interpretar estas secciones de la Ley de Municipios Autónomos. En esa ocasión, la Autoridad de Edificios Públicos (AEP) llevó a cabo una subasta para la remodelación de una escuela municipal por un costo de $40,000,000. La buena pro fue otorgada a una compañía llamada L.P.C., que pagó $1,212,000 en arbitrios de construcción. Apenas comenzados los trabajos preparativos para la construcción, la AEP paralizó la obra y dio por terminado su contrato con L.P.C. “con el ánimo de reducir el costo de la obra”.(22) Poco después, la AEP, como dueña de la obra, contrató a Aireko para que continuara con el proyecto y solicitó al municipio de Utuado que le extendiera a *679 dicha compañía un crédito equivalente a la cantidad que L.P.C. había pagado en concepto de arbitrios de construc-ción por la misma obra.(23) La AEP basó su argumento en que la obra era la misma y que lo único que cambió fue el contratista que la ejecutaría. Por tanto, no se le debían cobrar a éste los arbitrios de construcción que L.P.C. había pagado. El municipio no accedió a la petición. Posterior-mente, dado que Aireko insistió en no pagar, el municipio reclamó el pago de los arbitrios en los tribunales. En esa ocasión, señalamos que, aunque el- contratista es el respon-sable de pagar los arbitrios, es la obra la que genera la obligación de efectuar el pago. A esos efectos, señalamos que los arbitrios de construcción que imponen los munici-pios recaen sobre la obra a construirse y no sobre el contratista. (24) De esta manera, concluimos que por tra-tarse de la misma obra no procedía imponer el pago de arbitrios de construcción al nuevo contratista.
Es importante señalar que, al igual que ocurre en el caso de autos, en Mun. de Utuado v. Aireko Const. Corp. no había disposición estatutaria que atendiera la controversia planteada. Sin embargo, ello no fue óbice para que inter-pretáramos el estatuto para llenar dicha laguna y resolvié-ramos que, en efecto, el cambio de contratista no facultaba al municipio de Utuado a cobrar nuevamente los arbitrios de construcción. Concluimos que la interpretación pro-puesta por el municipio era irrazonable y no se debía sos-tener únicamente porque existía una laguna en el estatuto:
*680 Sin embargo, las alegaciones del Municipio no están sosteni-das por la Ley de Municipios Autónomos, debido a que dicha ley no provee disposiciones sobre el proceso que debe seguirse en casos como el que aquí nos ocupa. Es decir, nuestra Legis-latura no se ha expresado sobre las situaciones en que, luego de comenzada la construcción de la obra y sin que se desista de realizarla, se sustituye a la persona del contratista general.
No podemos avalar la interpretación que el Municipio pre-tende darle a la Ley de Municipios Autónomos. Hemos re-suelto que una sección de un estatuto no puede ser interpre-tada de forma aislada. Es preciso interpretar un estatuto en su totalidad, armonizando el significado de sus distintas par-tes e implementando la intención de la Asamblea Legislativa. La determinación que un tribunal haga debe asegurar el re-sultado que el legislador quiso obtener al crear la ley.
La Ley de Municipios Autónomos confiere a los municipios la autoridad para imponer arbitrios de construcción. Estos ar-bitrios deben ser pagados al inicio de la obra y se fijan de acuerdo con el costo del proyecto, sin importar cuántos contra-tistas lo construyan.(25)
Lo anterior nos presenta varios asuntos pertinentes a la controversia de autos. En primer lugar, la facultad imposi-tiva delegada a los municipios por la ley se ejercerá sobre la actividad económica a ser realizada en el territorio municipal. Los arbitrios recaerán sobre el valor de esa actividad. Notamos que el elemento central al determinar cuánto se debe pagar en concepto de arbitrios de construc-ción es el costo final de la obra. Por lo tanto, a medida que dicho costo fluctúe, también fluctuarán los arbitrios debidos. Ya vimos que el Artículo 2.007 (21 L.P.R.A. sec. 4057(e)) de la Ley de Municipios Autónomos establece cla-ramente el proceso a seguir cuando el valor aumenta, pero no es igualmente claro en caso que el valor disminuya. En segundo lugar, el que la Asamblea Legislativa no haya pre-visto todos los escenarios posibles al aprobar determinado estatuto no significa que debamos validar resultados que según el mismo estatuto resultan irrazonables. Por el con-trario, nuestro deber judicial es interpretar el estatuto ra- *681 zonablemente, de manera que se cumpla la intención legislativa. Hemos resuelto que “[a]nte la opción entre una interpretación literal de la ley que conduzca a resultados absurdos y una interpretación razonable que sea compatible con el propósito legislativo, se debe preferir la última”. (26)
B. La Ley de Municipios Autónomos atiende úni-camente el proceso de cobro y revisión de arbitrios de construcción. Por su parte, la Ley Núm. 113 de 10 de julio de 1974, según enmendada, regula el cobro y la revisión de patentes municipales.(27) Esta ley define una patente como “la contribución impuesta y cobrada por el municipio bajo las disposiciones de las secciones 651 a 652y de este título, a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien[,] a cual-quier negocio financiero o negocio en los municipios del Estado Libre Asociado de Puerto Rico”.(28) En ocasiones an-teriores hemos expresado que, aunque la patente adopta la forma de un permiso o licencia para el ejercicio de una actividad económica, realmente constituye un impuesto que va a variar de acuerdo con el volumen de negocio de la empresa tributada. (29)
Al igual que en el caso de los arbitrios de cons-trucción, el proceso para computar, cobrar y pagar una pa-tente municipal comienza con la presentación de una de-claración sobre el volumen de negocio ante el Director de Finanzas del municipio.(30) La cantidad a pagar se compu-tará de acuerdo con la actividad económica realizada, to- *682 mando como base el volumen de negocios que haya reali-zado la persona o entidad dentro de los límites territoriales del municipio.(31) La Ley de Patentes Municipales define volumen de negocios como “los ingresos brutos que se reci-ben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra indus-tria o negocio...”.(32) Por otra parte, define ingreso bruto como aquellos ingresos atribuibles a la operación que se lleva a cabo en el municipio.(33) En el caso de las obras de construcción, la base del cálculo de las patentes recae sobre el volumen de negocio del encargado de la construcción, equivalente al valor de la obra.
Por otro lado, la Ley de Patentes Municipales establece que la autoridad otorgada a los municipios para imponer patentes sobre el volumen de negocios del contri-buyente no se deberá interpretar como una privación o li-mitación de las facultades de los municipios de imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas sobre otros renglones.(34) De esta manera, la Asamblea Legislativa autorizó expresamente a los munici-pios a cobrar patentes y arbitrios sobre un mismo evento económico.(35)
*683 La ley también establece un proceso para la tasación y el cobro de deficiencias, en caso que se haya pagado por debajo de lo debido, así como para situaciones que requieran un reembolso, en caso de que se haya pagado en exceso.(36) En cuanto a posibles pagos en exceso que requieran un crédito o reembolso, la Ley de Patentes Municipales dispone en su Sección 33:
Si la persona hubiere pagado como un plazo de la patente más de la cantidad determinada como el monto correcto de dicho plazo, el pago en exceso se acreditará contra los plazos no pagados si los hubiere. Si la cantidad ya pagada, fuere o no a base de plazos, excediere de la cantidad determinada como el monto correcto de la patente, el pago en exceso se acreditará o se reintegrará según se provee en la sec. 652f de este título. Las disposiciones de esta sección y las disposiciones de la sec. 652f de este título serán de aplicación únicamente cuando el Director de Finanzas determine y notifique una deficiencia tal y como se define y regula en la sec. 651o de este título.(37)
Por su parte, la Sección 34, en lo pertinente, establece lo siguiente:
A menos que una reclamación de crédito o reintegro sea ra-dicada por la persona dentro de cuatro (4) años desde la fecha en que la declaración fue rendida por la persona o dentro de tres (3) años desde la fecha en que la patente fue pagada, no se concederá o hará crédito o reintegro alguno después del ven- *684 cimiento de aquél de dichos per[i]odos, aquel que expire más tarde.(38)
De lo anterior surge que el proceso para reclamar un reembolso establecido por estas secciones de la Ley de Pa-tentes Municipales está diseñado para atender dos circunstancias. En primer lugar, que la persona pague en exceso a lo que debía por causa de un error suyo. Es decir, que pague más de lo que se le exija. Por eso, uno de los puntos de partida es el momento en que se efectúa el pago, pues de esa manera se exige a la persona que sea diligente en impugnar lo pagado de más por error. El segundo esce-nario previsto por el estatuto es que, a pesar de haber pa-gado correctamente lo exigido por el municipio, la persona se percate de que la determinación inicial del municipio en cuanto a la actividad económica realizada o al cómputo es-pecífico de la patente correspondiente es incorrecta. En ambos casos, lo que se impugna es, o la determinación del municipio al establecer el valor de la actividad realizada o el cómputo que determinó el pago realizado. Por eso es que el otro punto de partida es la presentación de la declara-ción, pues se le exige a la persona que analice diligente-mente si la determinación del municipio es correcta.
De igual forma, la Sección 16 de la Ley de Patentes Municipales establece un procedimiento considerable-mente detallado para el cobro e impugnación de las defi-ciencias alegadas por el municipio.(39) La ley se limita, principalmente, a establecer que la acción para pedir un reembolso prescribirá a los tres años desde el pago o cuatro años desde que se presentó la declaración, el término que sea mayor.
Así, al igual que la Ley Núm. 81-1991, la Ley de *685 Patentes Municipales, a pesar de reconocer el derecho al reembolso, no establece un mecanismo para atender aque-lla situación en la que, por un cambio de orden que reduce el costo de la obra, la cantidad declarada resulta mayor a la real, dando lugar a un derecho de reembolso.
A medida que se establece un nuevo costo para la obra, se altera la cantidad que debe pagarse como patentes. El recurrido sostiene que el inicio del término prescriptivo para impugnar esa nueva determinación también se altera, para así comenzar a partir de la fecha del cambio. Por otro lado, si aceptamos la posición del municipio, es decir, que el término prescriptivo transcurre desde que se hace el pago original, el obligado a pagar la patente en este caso, Muñiz Burgos, tendría que solicitar el reembolso antes que tenga razón para exigirlo. Hemos resuelto que “un estatuto de prescripción que tenga el efecto de exigirle a los demandantes instar su acción antes de que tengan conocimiento de que tal causa de acción existe viola el debido proceso de ley”.(40) De igual forma, hemos expresado que “la Asamblea Legislativa tiene amplia facultad para establecer los términos correspondientes, siempre y cuando no sean tan cortos que violen la cláusula del debido proceso de ley”.(41) Evidentemente, un término prescriptivo que vence antes de que nazca la causa de acción es incompatible con dicha disposición constitucional.
C. Los términos prescriptivos no tienen vida propia, pues dependen de una causa de acción que los active. Sin causa de acción no hay término prescriptivo. Por lo tanto, será cuando todos los elementos de una causa de acción estén presentes que comenzará a correr el tér- *686 mino prescriptivo correspondiente.(42) Aceptar la posición del municipio le requeriría al contratista solicitar un reem-bolso al que aún no tiene derecho, pues no es hasta que varíe el costo de la obra que habrá una reducción corres-pondiente en los arbitrios y en la patente. En otras pala-bras, según la propuesta del municipio, el contribuyente tendría que instar una acción frívola para que su solicitud fuera oportuna. Además, no podemos olvidar que para efec-tos de tanto la Ley de Municipios Autónomos como la Ley de Patentes Municipales el cómputo correspondiente se hará tomando como base el costo final de la obra. Eviden-temente, si el dueño de la obra ordena cambios que redu-cen el costo de la obra a realizarse, los arbitrios y las pa-tentes disminuirán también. Si el pago por esos conceptos se hace antes de la reducción en el valor de la obra, habrá un pago en exceso desde el momento de la reducción y no antes, y, por consiguiente, desde ese momento y no antes nacerá la causa de acción para exigir el reembolso.
Por lo tanto, concluimos que cuando se reclame un reembolso por los arbitrios de construcción y las patentes municipales pagados en exceso debido a la reducción en el costo final de la obra como resultado de un cambio de orden requerido por el dueño de la obra, el término para instar la acción comenzará a correr desde que se hace dicho cambio.(43) Esta conclusión evita una lectura inconstitucional de los estatutos mencionados, pues, de lo contrario, las correspondientes acciones de reembolso prescribirían antes de poderse instar, lo cual violaría el debido proceso de ley. Peor aún, obligaría al contribuyente a solicitar el reembolso antes de que bajara el costo de la obra que produce el pago en exceso que se reclama. Ello resultaría en el absurdo que nuestro ordenamiento rechaza.
*687 D. Ahora bien, determinado el punto de par-tida, ¿cuál es el término prescriptivo aplicable en estos ca-sos? Los tribunales recurridos concluyeron que la orden de cambio era una nueva declaración de arbitrios y patentes desde la cual comenzaría a correr el término prescriptivo de cuatro años, según dispone la Ley de Patentes Municipales.(44) Coincidimos con el Tribunal de Apelacio-nes en que el término prescriptivo de cuatro años que es-tablece la Ley de Patentes Municipales para la reclama-ción del reintegro cuando se haya hecho un pago en exceso en concepto de patentes aplica a la situación de autos. Así, la autorización de una orden de cambio que reduzca el valor final de la obra constituye una nueva declaración desde la cual comienza a correr un nuevo término de cuatro años para presentar la solicitud de reembolso del pago en exceso de patentes municipales sobre la construcción.
En cuanto al reembolso de los arbitrios, aunque la Ley de Municipios Autónomos reconoce la posibilidad de que después de que estos se paguen surjan órdenes de cam-bio que alteren el valor final de la obra, solo contempla la posibilidad de que dicho valor aumente. A ese fin, la ley faculta a los municipios a solicitarle al desarrollador o con-tratista evidencia sobre el valor final de la construcción.(45) Una vez acreditado el costo final de la obra, el municipio podrá imponer el pago de arbitrios sobre el aumento en el valor de la obra.(46) Esta disposición evidencia la intención legislativa de ampliar el marco de acción de los municipios y de proveerles “las herramientas financieras, así como los *688 poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico”.(47)
Sin embargo, la Ley de Municipios Autónomos no men-ciona la situación contraria, la reducción en el valor de la obra producto de órdenes de cambio. Las múltiples en-miendas realizadas a la ley no han aclarado aún el proce-dimiento para presentar una solicitud de reembolso de los arbitrios pagados en exceso en aquellos casos en que el cambio de orden resulte en una reducción en el costo final de la obra. Tampoco han establecido un término prescrip-tivo para instar una solicitud de reintegro de arbitrios en situaciones como la de autos. No obstante, encontramos en la Ley de Municipios Autónomos una disposición que nos permite llenar esta laguna normativa. En esta, el legisla-dor establece un procedimiento y término para solicitar el reintegro de arbitrios de construcción que el contribuyente haya pagado previamente. Se trata del término de seis me-ses que aplica cuando, una vez pagados los arbitrios en su totalidad, el dueño de la obra decide paralizarla, antes o después de comenzada.(48)
En ocasiones anteriores hemos resuelto que, en ausen-cia de un término prescriptivo fijado por ley, debemos uti-lizar el término más análogo, recurriendo, incluso, a otra legislación afín a la materia.(49) En el caso de autos no surge la necesidad de identificar estatutos similares a la Ley de Municipios Autónomos. Por el contrario, la Asam-blea Legislativa estableció en la misma ley un término prescriptivo de seis meses para las solicitudes de reem-bolso de arbitrios de construcción cuando el dueño detiene la obra. Esta disposición evidencia que el legislador con- *689 templó la necesidad de establecer un término prescriptivo corto para regular las peticiones de reintegro de los arbi-trios de construcción. De esta manera, la Legislatura pro-curó proteger la capacidad fiscal de los municipios de poder contar con los ingresos recaudados para realizar su obra.(50)
Ante la ausencia de un término prescriptivo para solicitar reintegro de los arbitrios de construcción para la situación específica de autos, y hasta que la Legislatura se exprese sobre el vacío que hemos identificado, resolvemos adoptar el término de seis meses para reclamar un reembolso por arbitrios de construcción pagados en exceso como resultado de una reducción en el costo final de la obra debido a una orden de cambio requerida por el dueño de la obra. Con ello subsanamos la lesión al derecho del contribuyente a tributar por lo que realmente invierte y respetamos la política pública que le requiere diligencia en la presentación de su reclamo para salvaguardar las finanzas municipales.(51)
III
En el caso de autos, Muñiz Burgos pagó los arbitrios de construcción y las patentes municipales el 9 de octubre de 2000. Estos pagos correspondieron al cómputo que tomó *690 como base el costo original de la obra, según lo estableció el municipio. Si Muñiz Burgos hubiera entendido que dicho pago fue erróneo o que la declaración del municipio en cuanto al valor de la obra o las patentes y los arbitrios computados eran incorrectos, su causa de acción estaría prescrita. Pero Muñiz Burgos no impugna el cálculo original de los arbitrios o las patentes, sino el exceso creado por la disminución en las obras ordenada por la Autoridad de Edificios Públicos en diciembre de 2007. Argumenta el re-currido que no tenía razón alguna para instar una de-manda antes de esa fecha, pues aún no tenía derecho a reembolso.
La acción de la Autoridad de Edificios Públicos que re-dujo el costo de la obra tuvo un efecto sobre el cómputo de arbitrios y patentes, pues, como hemos visto, éstos corres-ponden al costo final de la obra. A medida que un cambio de orden aumenta el costo, aumentarán las patentes y los arbitrios. Igual ocurre con una reducción. El pago original realizado en octubre de 2000 se convirtió en excesivo cuando se redujo el costo final de la obra, pues partía de un costo inicial que terminó siendo mayor al costo final. Es desde que surge esa reducción, evidenciada por la orden de cambio correspondiente, que nace la causa de acción para solicitar el reembolso por la cantidad pagada en exceso y comienzan a transcurrir los términos prescriptivos, el de cuatro años aplicable al reembolso de las patentes y el de seis meses aplicable al reembolso de los arbitrios. No obs-tante, dado los hechos específicos de este caso, resulta in-necesario determinar si el recurrido solicitó el reintegro dentro del término prescriptivo aplicable, pues la orden de cambio deductiva en la cual basó su solicitud fue aprobada luego de entregada y aceptada la obra.
El Tribunal de Apelaciones resolvió que la orden deduc-tiva de la Autoridad de Edificios Públicos constituyó una nueva declaración que activaría un nuevo término prescriptivo. Sin embargo, en el expediente encontramos *691 evidencia de que Muñiz Burgos entregó la obra y que la Autoridad de Edificios Públicos la aceptó el 25 de mayo de 2004. La “Orden de Cambio Núm. 2” fue aprobada el 18 de diciembre de 2007, más de tres años después de finalizada y aceptada la obra. Esta es la única orden de cambio de-ductiva a la que se refieren las partes en sus alegatos. No podemos aceptar que una orden de cambio aprobada varios años después que se termina y se acepta una obra consti-tuya una nueva declaración que activa un nuevo término prescriptivo para solicitar reembolso de patentes y arbi-trios pagados en exceso. Evidentemente, la obra fue modi-ficada por instrucciones previas de su dueño. Si bien deter-minamos que no es razonable restringir el derecho a reclamar un reembolso por los arbitrios de construcción y las patentes municipales pagados en exceso, no podemos avalar la aprobación retroactiva de órdenes de cambio de-ductivas con miras a cumplir con los términos prescripti-vos para solicitar reembolsos. El contratista debe ser dili-gente en obtener por escrito cualquier cambio que reduzca el costo final de la obra, permitiéndole así al contratista solicitar el reembolso de arbitrios y patentes de forma oportuna. Al no presentar evidencia de una orden de cam-bio previa, a la que necesariamente respondieran las mo-dificaciones en la obra aceptada en el 2004, ni una solicitud de reembolso a partir de dicha orden, el recurrido no nos ha puesto en condiciones de conceder el reintegro del ex-ceso pagado en concepto de arbitrios de construcción y de patentes municipales.
Por último, el municipio objeta la imposición de honorarios de abogado. En nuestro ordenamiento, la imposición de honorarios de abogado procede cuando una parte ha actuado con temeridad o frivolidad. (52) De esta forma, se castiga a un litigante perdidoso que por su “terquedad, obstinación, contumacia e insistencia en una actitud des- *692 provista de fundamentos, obliga a la otra parte, innecesa-riamente, a asumir las molestias, gastos, trabajo e incon-venientes de un pleito”.(53) La decisión de imponer honorarios corresponde a la sana discreción del tribunal. Por lo tanto, solamente se dejará sin efecto si el foro pri-mario incurrió en abuso de discreción. Dada las circuns-tancias de este caso y las lagunas evidentes en la Ley de Municipios Autónomos y la Ley de Patentes Municipales, entendemos que el foro primario abusó de su discreción al imponerle al municipio el pago de honorarios. Por lo tanto, dejamos sin efecto dicha determinación.
A consecuencia de lo anterior, revocamos la decisión del Tribunal de Apelaciones y, por consiguiente, la del Tribunal de Primera Instancia. Se desestima la demanda presentada.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Estrella Martínez emitió una opinión concurrente, a la que se unieron los Jueces Asocia-dos Señores Martínez Torres y Rivera García.
— O —

 Apéndice de la Petición de certiorari, págs. 15-29. Esta orden de cambio es denominada como la “Orden deductiva núm. 2” por las partes y por los tribunales inferiores.

 Apéndice de la Petición de certiorari, pág. 3.

 En la carta enviada al Director de Finanzas del municipio de Yauco, el de-mandante detalla la partida de arbitrios de construcción y patentes municipales de la siguiente forma: tomando como base el precio original de $17,299,000, los arbitrios ascendían a $292,990.20 y las patentes a $86,495; el demandante alega que el nuevo precio de $17,014,029.52 reduce la cantidad de arbitrios a $288,163.51 y de patentes a $85,070.15, para una diferencia de $4,826.49 y $1,424.85, respectivamente (tanto Muñiz Burgos en su demanda, así como los tribunales inferiores en sus sentencias, establecen que la cantidad pagada en exceso es de $6,251.35, a pesar de que la suma de las cantidades individuales reclamadas totaliza $6,251.34). Para este cálculo, Mu- *671 ñiz Burgos partió de 0.005% en concepto de patentes y 0.016936817 por arbitrios. Apéndice de la Petición de certiorari, pág. 12.

 Como veremos, la Ley de Municipio Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos) establece que el término pres-criptivo que aplica para una acción de reembolso para arbitrios de construcción, cuando el dueño de la obra es quien la detiene, es de seis meses desde que se hace el pago en ese concepto.

 Apéndice de la Petición de certiorari, pág. 3. También surge del expediente una comunicación, de 1 de junio de 2004, de Muñiz Burgos dirigida a la Autoridad de Edificios Públicos en la cual consigna la devolución de ciertos materiales pertene-gientes a la agencia, “[al] terminar y entregar la Escuela Superior Urbana de Yauco”. íd., pág. 5.

 Muñiz Burgos también alegó que el Municipio de Yauco, mediante carta del 4 de marzo de 2008, a través del señor Hermes Caraballo Acosta, Recaudador Oficial del Municipio, le había concedido un crédito por $15,673.37 en el pago de los arbitrios de construcción y de patentes municipales ya que el contrato de construcción “sufrió un cambio de orden el cual disminuyó el costo del proyecto”. íd., pág. 10. En su contestación a la demanda, el Municipio admitió la existencia de la carta pero negó *672 que la misma “tenga el efecto alegado por la parte demandante; ya que la ley sólo facult[a] al Director de Finanzas la atención de tales recomendaciones para que pueda vincular al Municipio”. Id., pág. 30.

 Sentencia del Tribunal de Apelaciones, pág. 3, Apéndice de la Petición de certiorari, pág. 77.

 Ambos tribunales fundamentaron sus conclusiones en la definición de decla-ración de la sección 4057(a) de la Ley de Municipios Autónomos y en el periodo de prescripción que establece la sección 6521(b)(1) de la Ley de Patentes Municipales. Aplicaron el término prescriptivo de cuatro años desde el momento en que se auto-rizó la orden de cambio deductiva, concluyendo que Muñiz Burgos había reclamado oportunamente el reintegro de arbitrios y patentes municipales.

 En la Petición de certiorari, el Municipio señaló que el Tribunal de Apelacio-nes erró “[a]l dictaminar que el punto de partida para el cómputo de los cuatro (4) años que establece la Ley de Municipios Autónomos para solicitar reintegro de pa-tentes y arbitrios de construcción comienza a transcurrir desde la fecha en que se aprobó la orden deductiva del costo de la obra”. (Énfasis suplido). Petición de certio-rari, pág. 4.

 íd., págs. 5-6.

 íd., pág. 7.

 Alegato de la parte recurrida, pág. 2.

 íd., pág. 3.

 Ley Núm. 81-1991, según enmendada, 21 L.P.R.A. sec. 4001 et seq.

 Mun. de Utuado v. Aireko Const. Corp., 176 D.P.R. 897, 904 (2009). Véase, además, Ley Núm. 81-1991 la cual establece como política pública “otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financie-ras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico”. 21 L.P.R.A. sec. 4001 n.

 (Énfasis suplido). íd., en referencia a 21 L.P.R.A. sec. 4052(d).

 (Énfasis suplido). 21 L.P.R.A. sec. 4052(d).

 21 L.P.R.A. sec. 4057(a).

0) 21 L.P.R.A. sec. 4057(b).

 21 L.P.R.A. sec. 4057(e).

 (Énfasis suplido). íd.

 Mun. de Utuado v. Aireko Const. Corp., supra, pág. 900.

 Curiosamente, en dicho caso nos vimos precisados a puntualizar que LPC nunca solicitó el rembolso de los arbitrios de construcción que le pagó al municipio. íd.

 Mun. de Utuado v. Aireko Const. Corp., pág. 911. Véase, además, Interior Developers v. Mun. de San Juan, 177 D.P.R. 693 (2009), donde reafirmamos que la facultad de los municipios para imponer arbitrios de construcción está sujeta a que se configure el “hecho imponible” o “evento contributivo”, siendo el hecho imponible la construcción. Id., pág. 704. Expresamos entonces que, para efectos de los arbitrios, tanto el dueño de la obra como la persona encargada de construirla son considerados como contribuyentes ya que los arbitrios recaen sobre la obra. En los casos en que el dueño no sea quien construya la obra, el contratista será el responsable de efectuar el pago y pasar el costo al dueño.

 (Énfasis suplido y escolio omitido). Mun. de Utuado v. Aireko Const. Corp., supra, pág. 909.

 Martínez v. D.A.Co., 163 D.P.R. 594, 603 (2004).

 Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 et seq.

 21 L.P.R.A. sec. 651a(a)(16).

 Burlington Air Exp., Inc. v. Mun. Carolina, 154 D.P.R. 588 (2001); American Express Co. v. Mun. de San Juan, 120 D.P.R. 339 (1988); R.C.A. v. Gobierno de la Capital, 91 D.P.R. 416 (1964) (revocado por otras razones en E.L.A. v. Northwestern Selecta, 185 D.P.R. 40 (2012)).

 21 L.P.R.A. sec. 651i(b).

 Véase 21 L.P.R.A. secs. 651j y 651k. El cálculo de las patentes dependerá de si el contribuyente realizó anteriormente alguna actividad económica en el municipio. Si así lo hizo en el año anterior, las patentes a pagar se computarán tomando como base el ‘Volumen de negocios realizado durante su año de contabilidad terminado dentro del año calendario inmediatamente anterior”. 21 L.P.R.A. sec. 651f. Si, por el contrario, no llevó a cabo industria o negocio en el municipio durante el año previo, “la patente será computada tomando como base el volumen de negocios realizado durante el período en que llevó a cabo industria o negocio, elevando dicho volumen a una base anual”. Id.

 21 L.P.R.A. sec. 651a(a)(7).

 íd.

 21 L.P.R.A. sec. 651b.

 Río Const. Corp. v. Mun. de Caguas, 155 D.P.R. 394 (2001). La Ley Núm. 93-1992 enmendó la Ley de Patentes Municipales para, añadir el siguiente párrafo, entre otras enmiendas:
“La facultad que por [las secs. 651a a 652y de este título] se confiere a los municipios para imponer patentes sobre el volumen de negocios realizado por perso-nas o entidades dentro de sus límites territoriales en forma alguna se interpretará *683 que priva o limita las facultades de los municipios para imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas sobre cualesquiera otros ren-glones, no incompatibles con la tributación impuesta por el Estado, cuando los obje-tos y actividades sujetos a tributación se lleven a cabo dentro de los límites territo-riales del municipio. La tributación de un objeto o actividad se considerará un acto separado y distinto no incluido o inherente al tributo que se impone sobre el volumen de negocio que sirve de base para imponer las patentes”. 1992 (Parte 1) Leyes de Puerto Rico 579.

 Es necesario mencionar que el estatuto define lo que constituye una reduc-ción para efectos de este proceso: “El término ‘reducción’ significa aquella parte de una reducción, crédito, reintegro u otro reembols[o q]ue se hiciere por razón de que la patente que autorizan a imponer las sees. 651 a 652y de este título es menor que el exceso de la cantidad especificada en el inciso (a)(1) de esta sección sobre el monto de reducciones previamente hechas”. 21 L.P.R.A. sec. 651n(b). Por su parte, la sección también atiende las deficiencias que ocurren cuando la cantidad pagada es insuficiente. 21 L.P.R.A. sec. 651n(a).

 21 L.P.R.A. sec. 652e.

 21 L.P.R.A. sec. 652f(b)(1).

 21 L.P.R.A. sec. 651o. En esos casos, el municipio tendrá cuatro años para cobrar la deficiencia o seis años si se omitió, en cuanto al volumen de negocios, una cantidad que excediere el veinticinco por ciento del volumen declarado. 21 L.P.R.A. sec. 65 Ir. Si se presentó una declaración falsa o se omitió hacer la declaración como tal, no hay término prescriptivo. 21 L.P.R.A. sec. 651s(a).

 Vera v. Dr. Bravo, 161 D.P.R. 308, 327 (2004). Véanse, además: Nazario v. E.L.A., 159 D.P.R. 799, 805 (2003) (Sentencia); Santiago v. Ríos Alonso, 156 D.P.R. 181, 190 (2002); Ojeda v. El Vocero de P.R., 137 D.P.R. 315, 331 (1994); Alicea v. Córdova, 117 D.P.R. 676, 690 (1986).

 Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943, 949-950 (1991).

 Véase Rodríguez v. Barreto, 113 D.P.R. 541, 547 (1982).

 Resulta obvio pensar que una orden de cambio, sea esta deductiva o aditiva, la debe autorizar el dueño de la obra durante el transcurso de la construcción y antes de finalizarla.

 Los tribunales no aplicaron ningún término prescriptivo relacionado con la Ley de Municipios Autónomos. Véase escolio 8.

 21 L.P.R.A. sec. 4057(e). La Ley Núm. 258-2004 enmendó la Ley de Muni-cipios Autónomos para, entre otras disposiciones, añadir el siguiente párrafo al Ar-tículo 2.007(e):
“El municipio podrá solicitar al desarrollador o contratista, fuese público o pri-vado, evidencia acreditativa sobre el costo final del proyecto para verificar aumentos en el valor final de construcción, con el propósito de imponer pago de arbitrios por el aumento en valor de la obra”.

 íd.

 Artículo 1.002 de la Ley Núm. 81-1991, según enmendado por el Artículo 1 de la Ley Núm. 258-2004 (21 L.P.R.A. sec. 4001 n.).

 21 L.P.R.A. sec. 4057(e).

 Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740 (1981); Maldonado v. Russe, 153 D.P.R. 342 (2001); Suárez Ruiz v. Figueroa Colón, 145 D.P.R. 142(1998).

 En la Exposición de Motivos de la Ley Núm. 199-1996, que enmienda la Ley Núm. 81-1991 para incluir este término, la Asamblea Legislativa hace un recuento histórico de la legislación relacionada con las facultades legislativas y administrati-vas de los municipios. Dicho recuento enfatiza la intención legislativa de ampliar y fortalecer las facultades de los municipios para proveerles la autonomía administra-tiva y fiscal necesaria para fomentar su desarrollo urbano, social y económico.

 El Historial Legislativo de la Ley Núm. 199-1996, la cual enmienda la Ley Núm. 81-1991 en cuanto a establecer los procedimientos que deberán aplicar los municipios al imponer un arbitrio de construcción, revela que el Proyecto de la Cá-mara 1938 tenía como propósito definir “con mayor claridad el alcance y las limita-ciones de la facultad impositiva de los municipios y el Estado, así como las respon-sabilidades y protecciones necesarias para el contribuyente”. Informe del Senado de 10 de junio de 1996 sobre el P. de la C. Núm. 1938, pág. 1, e Informe de la Cámara de Representantes de 8 de mayo de 1996 del P. de la C. Núm. 1938.

 Domínguez v. GA Life, 157 D.P.R. 690, 706 (2002).

 Íd.